IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| IP CO., LLC<br><br>      *Plaintiff*,<br><br>v.<br><br>CELLNET TECHNOLOGY, INC.,<br><br>      *Defendant*. | Misc. Civil Action No. _____<br><br>(N.D. Ga. Civil Action No. 1:05-CV-2658-CC) |

**THIRD-PARTY LANDIS+GYR INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION TO QUASH SUBPOENA**

Third-party Landis+Gyr Inc. ("L+G") respectfully submits the following Memorandum of Points and Authorities in support of its motion to quash the *subpoena* that plaintiff IP CO., LLC ("IPCO") issued from this Court in connection with patent litigation pending in the Northern District of Georgia:

**I.     INTRODUCTION**

Without first attempting to exhaust its need for information through *inter partes* discovery in the underlying litigation, IPCO seeks to subject a non-party, L+G, to a vastly overbroad *subpoena*. Were L+G forced to comply with the unreasonable demands the *subpoena* seeks to impose, L+G would be subject to precisely the type of grossly undue burden that Federal Rule of Civil Procedure 45 forbids. There are several ways in which the *subpoena* is improper fundamentally.

First, IPCO's choice of forum imposes a significant burden on L+G by forcing it to deliver documents to a location over 700 miles from its base of operations in Indiana. The fact that L+G (a Delaware corporation) is subject to this Court's jurisdiction "does

not require the district court to enforce the *subpoena* in that district." *Ariel v. Jones*, 693 F.2d 1058, 1060 (11th Cir. 1982). Where the documents sought are located outside the district from which a *subpoena* was issued, Rule 45 views production in that foreign district to be an undue burden justifying the *subpoena* being quashed. Fed. R. Civ. P. 45(c)(3)(A)(iv); *Echostar Commc'ns Corp. v. News Corp. Ltd.*, 180 F.R.D. 391, 397 (D. Colo. 1998).

Second, IPCO's requests seek documents without regard to relevance, either in terms of the subject matter of responsive documents or the time period to which such documents pertain. Particularly when considering demands on non-parties, such overbroad requests constitute an undue burden. The burden is particularly undue where, as here, virtually all of the documents can be obtained from Cellnet Technologies, Inc. ("Cellnet"), defendant in the underlying litigation. Given that backdrop, IPCO's pursuit of non-party L+G does little to advance legitimate discovery interests. When examined carefully, IPCO's far-reaching *subpoena* only serves to harass L+G, a Cellnet strategic business ally, and potentially disrupt Cellnet's business operations; while this may be useful to IPCO in terms of settlement leverage, it is not a legitimate use of discovery under the Federal Rules.

Third, even assuming that some limited set of L+G documents relevant to the underlying litigation are both properly discoverable and available only from L+G, L+G should not be required to produce them in the absence of a protective order. IPCO's *subpoena* demands documents of a particularly sensitive nature, *i.e.*, documents containing confidential, trade secret, and other highly sensitive technical and business information. Once a suitable protective order is in place that adequately protects all of

the sensitive information, IPCO may be justified in pursuing discovery of unique documents only in L+G's possession, although that universe will likely be particularly small. The current *subpoena*, with no limitation on scope, improper place of production, and no safeguards to protect confidentiality, imposes an undue and improper burden on L+G and should be quashed. Fed. R. Civ. P. 45(c)(3)(B).

## II.   FACTUAL BACKGROUND

On October 14, 2005, IPCO sued Cellnet in the U.S. District Court for the Northern District of Georgia. In its suit, IPCO asserts two patents; U.S. Patent No. 6,249,516 entitled, "Wireless Network Gateway and Method for Providing Same," and U.S. Patent No. 6,044,062, entitled "Wireless Network System and Method for Providing Same" (collectively "IPCO patents"). The IPCO patents purport to claim a specific type of wireless mesh network[1], which is a network where the wireless radios are able to communicate with each other in "peer to peer" fashion, as opposed to the "master/slave" network paradigm used traditionally.[2] According to IPCO, Cellnet's UtiliNet mesh network systems and components infringe claims in these patents.

Cellnet's UtiliNet system is used, *inter alia*, by utilities (*i.e.*, energy utility providers) to monitor wirelessly the on-site energy consumption meters of its customers.

---

[1] Mesh networking is a way to route data, voice and instructions between nodes. It allows for continuous connections and reconfiguration around blocked paths by "hopping" from node to node until a connection can be established.
*See* http://en.wikipedia.org/wiki/Mesh_network.

[2] Master/slave is a model for a communication protocol where one device or process has unidirectional control over another (or others). Once a master/slave relationship between devices or processes is established, the direction of control is always from the master to the slave(s). *See* http://en.wikipedia.org/wiki/Master/slave.

3

(Houchins Decl. ¶ 3.)[3] With UtiliNet, utility providers no longer need to deploy large armies of "meter readers" to regularly inspect and record the usage displayed on every meter in their coverage area; instead the meter reading function is automated. To function with the UtiliNet system, however, meters must be fitted with a radio allowing it to communicate with the network. This is where L+G comes in.

L+G and its predecessors have been producing meters (or "energy consumption measurement devices") for over a century. Since January 2004, L+G has been in a commercial relationship with Cellnet to combine Cellnet's radio technology with L+G's meters to provide radio-enabled meters capable of interacting with Cellnet's communication systems, including some which interact with Cellnet's UtiliNet system. (Doyle Decl. ¶ 5.)[4] Although Landis+Gyr Ltd. is headquartered in Zug, Switzerland, L+G's principal place of business is in Lafayette, Indiana. (Doyle Decl. ¶ 2.)

On January 13, 2006, L+G received a *subpoena* that IPCO issued from the District of Delaware. (*See* Exhibit A.)[5] The *subpoena* essentially calls for the production of any and all documents that relate to the "Cellnet Technology" (broadly defined) for an "applicable time period" of June 19, 2001 to present. (*Id.* at 2). These conditions do not serve to limit, in any meaningful way, the scope of the *subpoena*.

---

[3] Citations to "Houchins Decl." in this Memorandum refer to the Declaration of Randolph Houchins in Support of Third-Party Landis+Gyr Inc.'s Motion to Quash Subpoena, filed concurrently.

[4] Citations to "Doyle Decl." in this Memorandum refer to the Declaration of Ellie A. Doyle in Support of Third-Party Landis+Gyr Inc.'s Motion to Quash Subpoena, filed concurrently.

[5] Exhibits in this Memorandum refer to the Exhibits attached to the Declaration of Sean P. Hayes in Support of Third-Party Landis+Gyr Inc.'s Motion to Quash Subpoena, filed concurrently.

The "applicable time period" (June 19, 2001–present) predates the January 2004 formation of L+G's business relationship with Cellnet's predecessor-in-interest (SchlumbergerSema Inc.) by *a full two and a half years.* (*Id.* at 4; Houchins Decl. ¶ 2.) The improper breadth of IPCO's *subpoena* is apparent not only in its inexplicable temporal scope, but also in the subject matter of the documents it seeks.

IPCO's document requests are drawn to the "Cellnet Technology," a term IPCO defines as effectively having no boundaries at all:

> The term "Cellnet Technology" means Cellnet's UtiliNet®-mesh network system, including but not limited to the InfiNet component, and any derivations thereof *and any other Cellnet system, component or product that Cellnet makes, uses, sells offers for sale, leases, offers for lease or licenses.*

(Ex. A at 2 (emphasis added).) IPCO's *subpoena*, which seeks documents and information related to "any other Cellnet system," makes no effort to tailor the discovery requests to the technology at issue in the underlying litigation.

It is important that the Court understand that the vast majority of Cellnet's radios were not designed to work with a UtiliNet mesh network; historically, the Cellnet radios worked on a traditional master/slave network, which is not at issue in the underlying patent litigation. (Houchins Decl. ¶ 3.) Consequently, by using the "any other Cellnet system" breadth, IPCO's *subpoena* reaches well beyond being reasonably calculated to lead to the discovery of admissible evidence. Indeed, IPCO's *subpoena* is not even limited to communication systems.

Finally, IPCO has no real need to pursue documents relating to "Cellnet Technology" from non-parties. The best source of such documents and information is Cellnet, not L+G. The discovery requests served on non-party L+G overlap completely

the requests for production and interrogatories IPCO propounded to Cellnet just weeks ago. Pursuant to those requests for production and interrogatories, IPCO should receive from Cellnet the vast majority of documents and information (to the extent not otherwise objectionable) that IPCO's *subpoena* seeks from L+G. (Houchins Decl. ¶¶ 5-6.) Given that IPCO's *subpoena* is duplicative of the discovery sought from Cellnet, IPCO has no cause to burden a non-party with the needless discovery effort and expense.

### III.   ARGUMENT

#### A.   Governing Law

This Court has broad discretion to enter an order quashing a *subpoena*. "While district courts are to interpret liberally the discovery provisions of the Federal Rules of Civil Procedure to encourage the free flow of information among litigants, limits do exist." *Heidelberg Americas, Inc. v. Tokyo Kikai Seisakusho, Ltd.*, 333 F.3d 38, 41 (1st Cir. 2003) (holding that "the district court acted within its discretion in concluding that the *subpoena* "cast too wide a net").[6]

By way of example, the Federal Rules of Civil Procedure require that a court quash or modify a *subpoena* that "requires disclosure of privileged or other protected matter and no exception or waiver applies or subjects a person to undue burden." Fed. R. Civ. P. 45(c)(3)(A)(iii)-(iv). Similarly, *subpoena*s that "require[] disclosure of a trade secret or other confidential research, development, or commercial information" may also

---

[6] *See also Miscellaneous Docket Matter No. 1 v. Miscellaneous Docket Matter No. 2*, 197 F.3d 922, 925 (8th Cir. 1999) (decisions on motions to quash reviewed for abuse of discretion); *Klay v. Humana, Inc.*, 425 F.3d 977, 982 (11th Cir. 2005) ("A district court is 'entitled to broad discretion in managing pretrial matters.'") (quoting *Perez v. Miami-Dade County*, 297 F.3d 1255, 1263 (11th Cir. 2002)).

be quashed. *Id.* These and other limitations come to play with respect to the L+G *subpoena*.

### B.     Production in Delaware Is Unduly Burdensome.

L+G chose to be a Delaware corporation and does not deny that fact. Nevertheless, the fact that L+G has a registered agent in Delaware does nothing to overcome the plain fact that none of the responsive documents are located in or controlled by anyone in Delaware. (Doyle Decl. ¶ 3.) "[S]imply because this Court has jurisdiction over [a] non-part[y] does not make this Court the most appropriate forum for either issuance or enforcement of *subpoena*s." *Echostar*, 180 F.R.D. at 396. Consequently, compliance with IPCO's *subpoena* constitutes an undue burden on L+G and the *subpoena* should be quashed.

In *Ariel v. Jones*, the Eleventh Circuit affirmed the quashing of a *subpoena* issued in the Southern District of Florida where the agent for service in Florida did not control the documents sought. 693 F.2d at 1061. Indeed, the documents were located at the Colorado headquarters of the party *subpoenaed*. Because the Florida registered agent lacked any control over the documents, and the requesting party was free and able to obtain the documents through a *subpoena* issued from the district court in Colorado, the issuing court quashed the *subpoena*, and the Eleventh Circuit affirmed. Put simply, "[D]iscovery rules cannot be used to require a non-party to produce documents in the custody of the head of the organization located in another judicial district." *Id.* at 1060 (citing *Cates v. LTV Aerospace Corp.*, 480 F.2d 620 (5th Cir. 1973)).

The "appropriate question to ask," according to the *Echostar* court, is "whether the agent for service of process possesses 'the degree of control' over the documents

which would make it appropriate to enforce a *subpoena* over a corporation from a court in one state, when the corporation's documents are located in another state." 180 F.R.D. at 396 (quoting *Ariel*, 693 F.2d at 1060). After noting that the 1991 amendments to Rule 45 had done nothing to undercut *Ariel*'s reasoning and the court's power to quash *subpoena*s posing an undue burden, the court held that the persons with most significant control over the requested documents were located in the states in which the documents were located. *Id.* at 397. As a result, expecting those persons to "either litigate the validity of the *subpoena* here in Colorado, or to produce the documents here in Colorado," was "burdensome," and the *subpoena*s were therefore "invalid." *Id.*

In the instant case, neither the documents requested nor the persons having control over those documents are located in Delaware. (Doyle Decl. ¶ 3.) Instead, documents relating to the Cellnet technology and the relationship between L+G and Cellnet are located at L+G's Indiana facilities. (*Id.*)

The same is true for the persons who maintain those documents. There is no reason to believe that IPCO should have any difficulty issuing a *subpoena* on behalf of the District Court for the Northern District of Indiana and accepting production of the documents there. Forcing L+G to produce the requested documents in Delaware, therefore, constitutes an undue burden that justifies this Court quashing the *subpoena*.

### C.   IPCO's *Subpoena* Is Boundless.

It is manifest that a court must quash or modify a *subpoena* which "subjects a person to undue burden." Fed. R. Civ. P. 45(c)(3)(A)(iv). And, courts are particularly reluctant to impose undue burdens upon non-parties. As the Southern District of New York has noted, in a patent case, "[t]he most obvious [litigation] burden is borne by non-

party witnesses, and we are instructed to be particularly sensitive to any prejudice to non-litigants drawn against their will into the legal disputes of others." *Jack Frost Labs., Inc. v. Physicians Nurses Mfg. Corp.*, Nos. 96-1114, 96-1430, 96-1543, 1994 U.S. Dist. LEXIS 261, at * 7 (S.D.N.Y. Jan. 13, 1994) (citing *Haworth, Inc. v. Herman Miller Inc.*, 998 F.2d 975, 978 (Fed. Cir. 1993)).

"A litigant may not engage in merely speculative inquiries in the guise of relevant discovery," *Micro Motion, Inc. v. Kane Steel Co., Inc.*, 894 F.2d 1318, 1328 (Fed. Cir. 1990). Yet IPCO has done just that—served an overreaching demand on a non-party perhaps hoping to satisfy its speculative (and perhaps competitive) curiosities. The imbalance between what IPCO wants (*i.e.*, everything even remotely relating to Cellnet—regardless of whether relevant to IPCO's suit), and what L+G can give without undue burden, is vast. *See Cusumano v. Microsoft Corp.*, 162 F.3d 708, 717 (1st Cir. 1998) ("[C]oncern for the unwanted burden thrust upon non-parties is a factor entitled to special weight in evaluating the balance of competing needs."). IPCO seeks documents that relate in any way, shape, or form to "Cellnet Technology," regardless of the documents' connection to the subject matter of the underlying dispute. (Ex. A at 2.)

Additionally, the underlying patent infringement action in the Northern District of Georgia and is subject to the Patent Local Rules of that District. Pursuant to those Rules, IPCO is required to provide "Infringement Contentions" that identify:

> "[s]eparately for each asserted claim, each accused apparatus, method, composition or other instrumentality ("Accused Instrumentality") of each accused party of which the claiming party is aware. ***This identification shall be as specific as possible, with each apparatus identified by name or model number, if known*** . . . .

9

(Ex. G, N.D. Ga. Patent L.R. 4.1 (emphasis added).) IPCO served its Infringement Contentions, pursuant to N.D. Ga. Patent L.R. 4.1, on January 20, 2006. IPCO's contentions identified only "Cellnet's *UtiliNet System*, including but not limited to the *InfiNet application*, and any associated software sold, licensed, or leased or offered for sale, license or lease, and any other Cellnet Systems similar thereto," as accused of infringing the IPCO patents-in-suit. (Ex. H at 2 (emphasis added).)

By identifying the specific products at issue, IPCO has drawn the outermost boundaries of permissible discovery for this case, whether that discovery is sought from defendant Cellnet or from non-party L+G. IPCO's present *subpoena*, which seeks the entire universe of information relating to "Cellnet Technology," is overly broad and unduly burdensome on its face.

Finally, IPCO's *subpoena* demands documents dating back to June 9, 2001 (Ex. A at 4) despite the fact that L+G's agreement relating to the UtiliNet system dates to January 8, 2004 (Doyle Decl. ¶ 4). There is no explanation for that over breadth.

### D.   The Information Sought Is Available Through Other Means.

Conceivably, indeed probably, every single one of IPCO's document requests can be satisfied via document requests to Cellnet. For example, IPCO demands "[a]ll documents that refer, reflect or relate to marketing of the Cellnet Technology." (Ex. A, 5.) IPCO has, in fact, made virtually the same request of Cellnet via a Request for Production of Documents under Rule 34. Fed. R. Civ. P. 34:

> 15. *All documents that refer, reflect or relate to the marketing, promotion, or advertisement of any Wireless Network System*, including but not limited to UtiliNet, designed, made, used, supplied, sold, licensed, leased or offered for sale, lease or license by Cellnet during the applicable time period.

(Ex. F at 9.) The plain text of this request demonstrates that IPCO can obtain from Cellnet the same "marketing" documents the *subpoena* seeks from L+G. This duplication pervades requests seeking Cellnet's financial and technical information as well.

Nevertheless, without waiting for Cellnet to respond, IPCO elected to burden L+G, a non-party, with the same request. IPCO's service of duplicative discovery is entirely unnecessary and serves no purpose, other than to harass and unduly burden non-party L+G, perhaps with the hope of pressuring Cellnet by pressuring Cellnet's vendors.

### E.     The IPCO Subpoena Seeks Sensitive Matter.

A district court evaluating the effects of a *subpoena* requiring the disclosure of confidential information has two options under Fed. R. Civ. P. 45(c)(3)(B)(i). "On timely motion, the court by which a *subpoena* was issued shall quash or modify the *subpoena* if it requires disclosure of privileged or other protected matter and no exception or waiver applies." Fed. R. Civ. P. 45(c)(3)(A)(iii). *See also Klay*, 425 F.3d at 983 ("The district court may either quash or modify the *subpoena*.").

L+G submits that IPCO's *subpoena* seeks information going to the heart of L+G's proprietary and confidential business methods and cost and revenue information—information that could cause substantial harm to L+G's competitive position if revealed to IPCO without any limits on its use outside of the courtroom. (Doyle Decl. ¶ 5.) Furthermore, the same potential for harm applies with equal force to Cellnet. That is, the documents IPCO seeks undoubtedly contain confidential Cellnet information, which, if revealed publicly would do serious harm to Cellnet's competitive position. (Houchins Decl. ¶ 7.)

11

Fed. R. Civ. P. 45(c)(3)(B) requires that a court determine: (i) whether the party who seeks the material has "a substantial need for the testimony or material that cannot be otherwise met without undue hardship"; and (ii) the reasonable compensation owed to the person subject to the *subpoena*. *Klay*, 425 F.3d at 983.

As to the first prong, IPCO simply cannot show, and indeed has not shown, that it has a substantial need of the materials it now demands from L+G (*e.g.*, all communication between Cellnet and L+G, regardless of subject matter, regardless of time frame). Moreover, as explained above, IPCO is entitled to obtain documents from its opponent, here Cellnet. Given this alternative avenue, IPCO cannot demonstrate that the material sought from IPCO represents a need that "cannot be otherwise met without undue hardship." Fed. R. Civ. P. 45(c)(3)(B).

As to the second prong, were IPCO to force L+G to reveal every Cellnet-related document within L+G's possession, custody, or control, even the reimbursement of the cost of production could hardly constitute "reasonable compensation" for the disruption to L+G's business relationship with Cellnet.

### F.  IPCO Will Not Be Prejudiced By Receiving Relevant Documents From Cellnet.

The relief this Motion seeks is particularly appropriate since IPCO will suffer no prejudice. Documents relevant to IPCO's claims are available from Cellnet. Such a reasonable alternative must factor into this Court's determination of this motion. Whether a *subpoena* subjects one to undue burden under Rule 45 is a question of reasonableness, which necessarily requires that the Court balance the interests served by compliance against the interests furthered by quashing. Charles Alan Wright & Arthur R. Miller, 9A FEDERAL PRACTICE AND PROCEDURE § 2463 (2d ed. 1995 Suppl. 2005). In

that calculus, the Court must consider whether the information sought is necessary and available from another source as it is here. *Id.*

## V. CONCLUSION

For all of the foregoing reasons, L+G respectfully requests the Court enter an order quashing the *subpoena* issued by IPCO on behalf of this Court and served on L+G.

Dated: January 23, 2006

FISH & RICHARDSON P.C.

By: _____
William J. Marsden, Jr. (I.D. No. 2247)
Sean P. Hayes (I.D. No. 4413)
FISH & RICHARDSON P.C.
919 N. Market Street, Suite 1100
Wilmington, Delaware 19899-1114
Ph: 302-652-5070
Fx: 302-652-0607
marsden@fr.com
hayes@fr.com

**Attorneys for Third-Party Landis+Gyr Inc.**

Of counsel:

Nagendra Setty
Georgia Bar No. 636205
Daniel A. Kent
Georgia Bar No. 415110
Christopher O. Green
Georgia Bar No. 037617
Noah C. Graubart
Georgia Bar No. 141862

FISH & RICHARDSON P.C.
1230 Peachtree Street N.E.
19th Floor
Atlanta, Georgia 30309
Ph: 404-892-5005
Fx: 404-892-5002

## CERTIFICATE OF SERVICE

I, Sean P. Hayes, hereby certify that on January 23, 2006, a true and correct copy of **THIRD-PARTY LANDIS+GYR INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION TO QUASH** *SUBPOENA* was caused to be served on the attorneys of record at the following addresses as indicated:

### VIA HAND DELIVERY

Gary W. Lipkin, Esq.
Duane Morris LLP
1100 North Market Street
Wilmington, DE 19801-1246

By: _____
Sean P. Hayes