IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

IP CO., LLC,

           *Plaintiff,*

    v.

CELLNET TECHNOLOGY, INC.,

           *Defendant.*

Misc. Civil Action No. _____

(N.D.Ga. Civil Action No. 1:05-CV-2658-CC)

## DECLARATION OF SEAN P. HAYES IN SUPPORT OF THIRD-PARTY LANDIS+GYR INC.'S MOTION TO QUASH SUBPOENA

I, Sean P. Hayes, declare that I am over twenty-one (21) years of age and am competent to make the following statements based on my personal knowledge:

1.     I am an attorney with the law firm of Fish & Richardson P.C., 919 N. Market Street, Suite 1100, Wilmington, DE 19899-1114, and a member in good standing of the Delaware State Bar.

2.     Fish & Richardson, P.C., represents Third-Party Landis+Gyr, Inc. ("L+G") in connection with the subpoena issued from the United States District Court for the District of Delaware by Plaintiff IP CO., LLC ("IPCO") in its litigation with Defendant Cellnet Technologies, Inc. ("CELLNET") (the "underlying litigation").

3.     Attached as Exhibit A is a true and correct copy of the subpoena issued on behalf of United States District Court for the District of Delaware by IPCO to L+G on December 29, 2005.

4.      Attached as Exhibit B is a true and correct copy of the complaint filed in the United States District Court for the Northern District of Georgia in the underlying litigation entitled, *IP Co., LLC v. Cellnet Technologies, Inc.*, Civil Action No. 1:05-CV-2658-CC.

5.      Attached as Exhibit C is a true and correct copy of a brochure on Cellnet's UtiliNet product obtained from Cellnet's website at http://www.cellnet.com/pdf/UtiliNetOverview_w.pdf.

6.      Attached as Exhibit D is a true and correct copy of a page obtained from Landis+Gyr's Website, available at http://www.landisgyr.com/Default.asp.

7.      Attached as Exhibit E is a true and correct copy of a page obtained from Landis+Gyr's Website, available at http://www.landisgyr.com/en/cou/am_north.htm.

8.      Attached as Exhibit F is a true and correct copy of IPCO's First Set of Requests for Production of Documents to Cellnet.

9.      Attached as Exhibit G is a true and correct copy of the Local Rules of Practice for Patent Cases before the United States District Court for the Northern District of Georgia.

10.     Attached as Exhibit H is a true and correct copy, in pertinent part, of IPCO's Infringement Contentions served on Cellnet pursuant to L.P.R. 4.1.

2

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on January 23, 2006.

Sean P. Hayes (ID No. 4413)



AO88 (Rev. 1/94) Subpoena in a Civil Case

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

IPCO, LLC,                               )
                                         )
            Plaintiff,                   )    **SUBPOENA IN A CIVIL CASE**
                                         )
      v.                                 )    CIVIL ACTION FILE NO. 1:05-CV-2658-CC;
                                         )    UNITED STATES DISTRICT COURT
                                         )    NORTHERN DISTRICT OF GEORGIA
CELLNET TECHNOLOGY, INC.,                )
                                         )
            Defendant.                   )

TO:    Landis + Gyr, Inc.
       C/O the Corporation Trust Company
       Corporation Trust Center 1209 Orange Street
       Wilmington, DE 19801

☐ YOU ARE COMMANDED to appear in the United States District Court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
|  | DATE AND TIME |

☐ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION: | DATE AND TIME : |
|---|---|

☒ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below: (see Schedule A attached hereto).

| PLACE:<br>Gary W. Lipkin<br>Duane Morris LLP<br>1100 North Market Street, Suite 1200<br>Wilmington, DE 19801-1246<br>302.657.4900 : | DATE AND TIME:<br>9:00 a.m.<br>January 13, 2006 |
|---|---|

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT)<br><br>*Gary W. Lipkin*<br>Attorney for Intervener/Defendant/Counter-Plaintiff. | DATE<br><br>December 29, 2005 |
|---|---|

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER

Gary W. Lipkin, Duane Morris LLP, 1100 North Market Street, Suite 1200, Wilmington, DE 19801-1246 (302.657.4900)

## SCHEDULE A

### INSTRUCTIONS

A.    Produce all responsive documents in your possession, custody or control, wherever located.

B.    Produce entire documents, including attachments, enclosures, cover letters, memoranda, and appendices, with all staples and clips attached and with all associated file folders, dividers, and file labels.

C.    Electronic records and computerized information must be produced in an intelligible format or together with a description of the system from which it was derived sufficient to permit rendering the materials intelligible.

D.    Should any document or thing be withheld based on some claim of privilege or fail to be produced due to its loss or destruction, please supply the following information:

       1.    The type of document or thing, e.g., letter or memorandum;

       2.    The general subject matter of the document or identity of the thing;

       3.    The date of the document or thing;

       4.    If a document, the number of pages in the document;

       5.    Such other information as is sufficient to identify the document or thing for a subpoena duces tecum, including, when indicated, the author of the document, any recipients shown in the document, and, where not apparent, the relationship of the author, addressees, and recipients to each other; and

       6.    The claimed ground(s) for limitation of discovery (e.g., attorney-client privilege or attorney work product) and the facts, statutes, rules, or decisions upon which the claim is founded or the circumstances of the loss or destruction of the document or thing.

E.    If no documents or things are responsive to a particular request, you are to state that no responsive documents or things exist.

FROM :LANDIS+GYR INC.         FAX NO. :7652429471         Jan. 03 2006 03:33PM   P4

F.    Any redacted document should be clearly stamped with the word "REDACTED," and the portions redacted should be clearly indicated.

## DEFINITIONS

The following definitions shall apply herein, regardless of whether upper or lower case letters are used:

A.    The term "Cellnet" shall mean Cellnet Technologies, Inc., its predecessors, successors, parents, subsidiaries and related companies, and shall include its present and former officers, directors, agents, employees, accountants, attorneys, investigators, consultants, and representatives.

B.    The terms "you," "your," and "Landis & Gyr" shall mean Landis + Gyr, Inc., Landis & Gyr, and any of their predecessors, successors, parents, subsidiaries and related companies, and shall include any of their present and former officers, directors, agents, employees, accountants, attorneys, investigators, consultants, and representatives.

C.    The term "IPCO" shall mean IP CO., LLC and its present and former officers, directors, agents, employees, and representatives.

D.    The term "Civil Action" shall mean Civil Action No.: 1:05-CV-2658-CC, which is pending before the Federal District Court for the Northern District of Georgia between IPCO and Cellnet.

E.    The term "Cellnet Technology" means Cellnet's Utilinet®-mesh network system, including but not limited to the InfiNet component, and any derivations thereof and any other Cellnet system, component or product that Cellnet makes, uses, sells, offers for sale, leases, offers for lease or licenses.

Sd  WdⱵ€:€0 900₂ €0 'ueſ                TZⱵ162ⱯS9Z :'ON XeⱭ                'ƆNI ꓤⱯ⅁+SIⱭNⱯꓶ :WOꓤⱭ

F.    The terms "licensed" or "licensing" means any authorization to make, have made, use, sell or offer for sale any product or process: (i) the unlicensed manufacture, use, offer for sale, or sale of which would infringe any United States or foreign patent; (ii) that is claimed in any United States or foreign patent; or (iii) that is the subject of a trade secret, including but not limited to any agreement (whether in the form of a grant, sublicense, bilateral contract, option, offer to make a unilateral contract, stipulation in a legal action or other proceeding, statement that patent rights will not be asserted in respect of a particular subject matter, or agreement to sell or distribute any patented product) and any schedule, addendum, or amendment thereto, and any modification thereof.

G.    The terms "business entity" or "entity" shall mean firms, corporations, partnerships, joint ventures, unincorporated associations, companies, businesses, partnerships, proprietorships, or fictitious or trade names.

H.    The term "date" shall mean the precise month, day, and year, if known, or as precise a statement of the month, day, and year as is permitted by your knowledge and the documents and information available to you.

I.    The phrase "refer, reflect or relate to," with respect to any given subject, shall mean constituting, containing, embodying, evidencing, reflecting, identifying, stating, dealing with, or in any way pertinent to that subject, including without limitation documents concerning the preparation of other documents.

J.    The term "any" shall be deemed to include and encompass the words "each" and "all." The use of the word "or" shall mean "and" as well as "or."

K.    The term "document" shall mean, in addition to its common meaning, the original and all non-identical copies of every writing or record of every type and description, however

9d   Wd⊅E:E0 900Z E0 '�857   ⳑᴢ⅌ⅼ�6Zᐩ5⅁ᴢᴢ : 'ON XⱯɟ   'ƆNI ᴚⱯ⅁ᐩSIᗡNⱯ⅂ɟ : ⱲOᴚɟ

produced or reproduced, that are in your possession, custody, or control, or to which you have access, including, without limitation, correspondence, memoranda, tapes, stenographic or handwritten notes, electronic mail, e-mail, instant messaging correspondence, invoices, purchase orders, telegrams, telexes, studies, publications, films, microfilms, voice or sound recordings, computer records or data in whatever form they may be stored or kept, magnetic records, maps, reports, surveys, statistical compilations, tax returns, accounting or other work papers, invoices, receipts, checks, check stubs, accounts, deposit slips, and ledgers.

      L.     The term "applicable time period" shall mean June 19, 2001 through the date of service of your responses to these document requests.

      M.     The term "facts" shall mean all facts, evidence, details or information of any type acquired by Cellnet, by any means.

      N.     The term "communications" shall mean any and all written communications between two or more persons contained in any documents, or oral communications including, but not limited to, telephone communications, personal conferences or meetings between two or more persons.

      O.     "Any" and "all" shall be construed to mean both any and all.

      P.     The words "and" and "or" shall be construed conjunctively or disjunctively, whichever makes the request most inclusive.

      Q.     The singular form of a word should be interpreted in the plural as well.

## DOCUMENTS TO BE PRODUCED

1.      All documents that refer, reflect or relate to the sale, lease or licensing of Cellnet Technology.

2.      All documents that refer, reflect or relate to any contracts between Landis & Gyr and Cellnet.

3.      All documents that refer, reflect or relate to marketing of the Cellnet Technology.

4.      All documents that refer, reflect or relate to the technical details of any Cellnet Techonolgy.

5.      All documents that refer, reflect or relate to communications with Cellnet or any other party regarding IPCO, the Civil Action, or any of IPCO's patents.

6.      Documents identifying any revenues obtained through the use, sale, lease or licensing of Cellnet Technolgy.

7.      All documents that refer, reflect or relate to communications with Cellnet regarding current, past or projected sales of or profits derived from the sale, lease or license of any Cellnet Technology.

8.      All documents that refer, reflect or relate to the Civil Action or any dispute between Cellnet and IPCO.

9.      All documents that refer, reflect or relate to the value of the Cellnet Technology.

10.     All documents that refer, reflect or relate to communications with Cellnet regarding the value of the Cellnet Technology.

11.     All documents that refer, reflect or relate to projected sales, leases and licensing over the next five (5) years of the Cellnet Technology.

B



FILED IN CLERK'S OFFICE
U.S.D.C. Atlanta

OCT 1 4 2005

LUTHER D. THOMAS, Clerk
By
Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| IP CO., LLC, | ) |
| | ) |
| | ) CIVIL ACTION FILE |
| Plaintiff, | ) |
| | ) |
| v | ) |
| | ) NO. **1** 05-CV 2658 |
| CELLNET TECHNOLOGY, INC., | ) |
| | ) |
| Defendant. | ) **JURY TRIAL DEMANDED** |
| | ) |

## COMPLAINT

NOW COMES Plaintiff IP CO., LCC ("IPCO"), and hereby makes and files

this Complaint against defendant CELLNET TECHNOLOGY, INC ("Cellnet")

for infringement of U.S. Patent Nos. 6,249,516 and 6,044,062 under 35 U.S.C. §

271 IPCO hereby demands a jury trial and alleges as follows:

### Parties

1     IPCO is a Georgia limited liability corporation headquartered in

Atlanta, Georgia.

2     Cellnet is a Delaware corporation, having its principal place of

business at 30000 Mill Creek Avenue, Suite 100, Alpharetta, Georgia 30022.

## Jurisdiction and Venue

3.   This is an action for patent infringement arising under the patent laws of the United States, Title 35, United States Code. This Court has exclusive subject matter jurisdiction pursuant to 28 U.S.C. § 1338(a).

4.   This Court has personal jurisdiction over Cellnet. On information and belief, Cellnet resides in and regularly conducts business within the State of Georgia and this judicial district, including actions and conduct related to the infringement alleged herein. Cellnet has a registered agent located at 3761 Venture Drive, Duluth, Georgia 30096.

5.   Venue is proper in this Court pursuant to 28 U.S.C §§ 1391 and 1400(b). Cellnet has committed acts of infringement within the State of Georgia and, more particularly, within this judicial district.

## COUNT I

### Infringement of the '516 Patent

6.   IPCO repeats and incorporates by reference as if fully stated herein the allegations in paragraphs 1 through 5 above.

7.   United States Patent No. 6,249,516 ("the '516 Patent"), entitled "Wireless Network Gateway and Method for Providing Same," was duly and

-2-

legally issued by the United States Patent Office on June 19, 2001, after full and fair examination. A copy of the '516 Patent is attached hereto as Exhibit "A."

8    IPCO is the assignee of all rights, title and interest in and to the '516 Patent and possesses all rights of recovery under the '516 Patent

9.    Upon information and belief, Cellnet makes, uses, offers to sell, and/or sells a wireless network gateway system.

10.    Cellnet has infringed and is infringing at least one claim of the '516 Patent by making, using, offering to sell, and/or selling its wireless network gateway system  In particular, Cellnet is infringing the '516 Patent under 35 U.S.C. § 271 by performing, without authority, one or more of the following acts: (a) making, using, offering to sell, and/or selling within the United States products and services that practice the inventions of the '516 Patent; (b) importing into the United States the inventions of the '516 Patent; (c) contributing to the infringement of the '516 Patent by others in the United States; and/or (d) inducing others to infringe the '516 Patent within the United States

11.    Upon information and belief, Cellnet's infringement, inducement of infringement, and/or contributory infringement of the '516 Patent has been willful and deliberate after receipt of notice of the '516 Patent.

-3-

12.   IPCO has suffered damages as a result of Cellnet's infringement of the '516 Patent and will continue to suffer damages and irreparable harm in the future unless Cellnet is enjoined from infringing further the '516 Patent.

## COUNT II

### Infringement of the '062 Patent

13.   IPCO repeats and incorporates by reference as if fully stated herein the allegations in paragraphs 1 through 12 above.

14.   United States Patent No. 6,044,062 ("the '062 Patent"), entitled "Wireless Network System and Method for Providing Same," was duly and legally issued by the United States Patent Office on March 28, 2000, after full and fair examination. A copy of the '062 Patent is attached hereto as Exhibit "B"

15.   IPCO is the assignee of all rights, title and interest in and to the '062 Patent and possesses all rights of recovery under the '062 Patent.

16.   Upon information and belief, Cellnet makes, uses, offers to sell, and/or sells a wireless network system.

17.   Cellnet has infringed and is infringing at least one claim of the '062 Patent by making, using, offering to sell, and/or selling its wireless network system. In particular, Cellnet is infringing the '062 Patent under 35 U.S.C. § 271

-4-

by performing, without authority, one or more of the following acts: (a) making,

using, offering to sell, and/or selling within the United States products and services

that practice the inventions of the '062 Patent; (b) importing into the United States

the inventions of the '062 Patent; (c) contributing to the infringement of the '062

Patent by others in the United States; and/or (d) inducing others to infringe the

'062 Patent within the United States.

18.    Upon information and belief, Cellnet's infringement, inducement of

infringement, and/or contributory infringement of the '062 Patent has been willful

and deliberate after receipt of notice of the '062 Patent.

19.    IPCO has suffered damages as a result of Cellnet's infringement of

the '062 Patent and will continue to suffer damages and irreparable harm in the

future unless Cellnet is enjoined from infringing further the '062 Patent.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff IP CO., LLC prays for the following relief against

Defendant Cellnet Technology, Inc.:

A.    A judgment that Defendant has directly infringed the '516 and '062

Patents, contributorily infringed the '516 and '062 Patents, and/or induced

infringement of the '516 and '062 Patents;

-5-

B    A preliminary, and thereafter permanent, injunction enjoining and restraining Defendant and its officers, directors, agents, servants, employees, attorneys, and all others acting under, by or through them, from directly infringing, contributorily infringing, and inducing the infringement of the '516 and '062 Patents;

C.    A judgment and order requiring Cellnet to pay IPCO damages under 35 U.S.C. § 284, including treble damages for willful infringement;

D.    A judgment and order requiring Cellnet to pay IPCO pre-judgment and post-judgment interest on the damages awarded;

E    A judgment requiring Cellnet to pay the costs of this action (including all disbursements) and attorneys' fees as provided by 35 U.S.C. § 285, with prejudgment interest; and

F.    Such other and further relief as this Court may deem just and equitable.

## DEMAND FOR JURY TRIAL

Plaintiff IP CO., LLC hereby demands that all issues be determined by a jury.

-6-

Respectfully submitted, this /4th day of October, 2005

DUANE MORRIS LLP

John G. Herman
   (Georgia Bar No. 348370)
Matthew C. Gaudet
   (Georgia Bar No. 287789)

1180 West Peachtree Street, Suite 700
Atlanta, Georgia 30309-3448
404-253-6900 (telephone)
404-253-6901 (facsimile)

Attorneys for Plaintiff
IP CO., LLC

-7-



# cellnet

# UTILINET® WIRELESS COMMUNICATION

Cellnet offers you the UtiliNet® technology, one of the fastest and most reliable wireless data communication solutions available today. The UtiliNet technology uses spread spectrum radios in the license-free 902-928 MHz area of the radio spectrum to provide reliable network answers for remote telemetry and distributed control applications.

## DELIVERING DATA IN A SMARTER SPECTRUM



## wireless communication

### ❖ A MULTI-POINT NETWORK

Much like a giant fishnet over a service area, Cellnet® UtiliNet® radios work together to create a mesh. At each point where one thread of the fishnet crosses over another, a node is created in the wide area network (WAN). A node is one radio that may be attached to an end-device(s). Because each radio can speak to and respond to neighboring radios in the network, each radio is an equal participant in the network. The result is increased communication reliability because there is no single point of failure. While a radio is interacting with an end-device(s), it is simultaneously acting as part of the mesh network. The concept of creating a mesh is central to what makes UtiliNet a truly robust data communication solution.

Each radio has the equivalent of a programmable logic controller (PLC)-like device located inside. This device enables the radio to act much like a small computer, carrying out any number of computing and command functions. The intelligence in each radio means that a system operator is able to delegate many routine decisions out into the system. The distribution of intelligence throughout a system means that a network operator has more time to focus on the most important tasks.

Each end-device radio generates a

'packet' of data that is transmitted to some destination. The packet is 'addressed' to the destination and entered into the network. The data packet traverses the network by 'hopping' from radio to radio in the direction of the destination-addressed radio. The route chosen for traversing the network is dynamic and employs automatic rerouting in the event a particular data path is not clear. The system automatically minimizes the amount of "hops" between the radios, which increase the transmission speed.

A robust mesh network is excellent for executing intelligent multi-point-to-multi-point communications. Traditional point-to-multi-point systems are prone to network congestion as data streams back towards a master station. A mesh network eliminates this problem as data is evenly spread across the entire mesh (i.e., a multi-point-to-multi-point network). Furthermore, most of these traditional network topologies "poll" gathering data sequentially. UtiliNet radios can handle peer-to-peer and unsolicited reporting-which is both faster and more efficient.

### ❖ FEATURES

**Speed –**
9.6 and 19.2 kbps auto adjusting

**Downloadable Code –**
firmware updates easily downloaded into each radio.

**Scalable –**
coverage areas and performance can be increased by simply adding more radios.

**License-free –**
radios operate in the 902-928MHz (unlicensed) area of the radio spectrum.

**Automatic Routing –**
with its destination address, each data packet seeks out a clear path across the mesh network.

**Data Security –**
encryption security and error checking algorithms assure integrity and reliability.

**Network Performance Statistics –**
each radio maintains its own table of addresses of neighboring radios, knows their statuses, and automatically maps the network.

**Asynchronous Frequency Hopping –**
asynchronous spread spectrum frequency hopping allows multiple radios to use the same bandwidth simultaneously transmitting multiple messages.

**Customized Capabilities –**
UtiliNet-customized DCWs can tackle your hardest operational problems.



# INFORMATION into INTELLIGENCE

## APPLICATIONS

### THE NETWORK

COMBINES THE BEST OF THREE IMPORTANT TECHNOLOGIES:

SPREAD SPECTRUM, PACKET SWITCHING, AND A CONNECTION-LESS MESH NETWORK ARCHITECTURE. THESE THREE TECHNOLOGIES WORK TOGETHER TO ENSURE THAT UTILINET NETWORKS ARE FAST, OPERATE TRANSPARENTLY, AND DELIVER DATA MESSAGES

### REMOTE TELEMETRY

If you have the need to communicate with end devices located anywhere in the field, UtiliNet is the answer. Our radios, when connected to end-devices, will establish the reliable communication link to and from the field. No longer is it necessary to dispatch an employee to check on a device, such as wells, controls, monitors, meters, or compressor stations. Intelligent UtiliNet radios work together to bring back data to one or more central processing sites. You can retrieve data while in the field too! In a Utilinet network, every radio is an access point to the network. That means that critical data is available in the office or in the field simultaneously. Wirelessly collect information on distant devices (wells, pumps, meters, etc.) without wasting valuable worker-hours.

WITH THE HIGHEST SECURITY AND RELIABILITY, UTILINET IS TRULY UNIQUE AMONG SPREAD SPECTRUM RADIO NETWORKS BECAUSE IT WAS DESIGNED TO OPERATE AS A RELIABLE LICENSE-FREE WAN NOW AND IN THE FUTURE. THE COMBINATION OF THESE THREE TECHNOLOGIES MAKES IT POSSIBLE.

**THE CELLNET UtiliNET® WIRELESS FIXED NETWORK** NOT ONLY ENABLES UTILITIES TO COMMUNICATE WITH END DEVICES IN THE FIELD, IT PROVIDES DISTRIBUTED CONTROL THROUGHOUT THE NETWORK.

### ADVANCED METERING SYSTEMS

In the coming era of increased deregulation and competition, utilities need to have more accurate information and more frequent contact with customers. Every utility knows that its largest customers can make or break the operational and financial performance of a utility—whether gas distribution, electric, water, or waste water.

Industrial meter reading is an excellent example. Knowing how much energy a manufacturing plant in your service territory is using and at what time of day is critical for a utility's success. UtiliNet puts a utility in touch with just that type of information. With UtiliNet two-way communication radios connected to industrial meters, utilities can read meters and collect load data once a day or once a minute, and report back in real-time anomalies (i.e. voltage sags/swells, reverse power, etc.) at the customer site. This enables you to make distribution planning decisions based on data collected today, not last month or last year. All this information is available directly from a control center and without wires. And because UtiliNet radios are part of a network, utilities can share metering data with customers-enabling the customer and the utility to work together to make sensible and economic usage decisions. UtiliNet puts utilities in touch with customer information wirelessly.

### DISTRIBUTED CONTROL

Microprocessor-based controllers are everywhere. They control pumps for municipal water districts, capacitor banks for electric utilities and wells, and compressor stations for gas production companies. They are in almost every remote terminal unit from Alaska to Australia. The applications are limitless. The majority of these controllers are connected by wire to some control or operations center. UtiliNet not only connects you wirelessly to remote controllers and end devices, but intelligent UtiliNet radios also can be programmed to interact with microprocessor-based controllers to undertake, within predetermined parameters, command and control functions without the requirement of personal attention from an operation center. Once a command or control function has been initiated and completed, a report can be sent to the operations center confirming status.

By distributing intelligence into the field, operations staff can focus their time on only the most important matters requiring direct attention. UtiliNet functionality helps companies achieve both operational and financial efficiencies.



# cellnet

30000 Mill Creek Avenue
Suite 100
Alpharetta, Georgia 30022
Phone   678.258.1500
Fax      678.258.1550
www.cellnet.com

© Cellnet 2005. All Rights Reserved. UTLG-0001208-04-25

D



| Electricity Meters | Heat/Cold Meters | Demand Side Management | Payment Systems | Metering Systems | Deutsch |
|---|---|---|---|---|---|

- Jobs & Careers
- Legal Disclaimer
- Exhibition Plan



E-world
energy & water

visit us: Halle 3, Stand 495



**Inte**

Cour

- Ho
- Lar
- Co
- Fac
- Pre
- Qu

e-So

## Quality, precision and reliability
## in energy consumption measurement

Since 1896 the name Landis+Gyr has been synonymous with quality, precision and reliability in energy consumption measurement.

Our electricity, heat and prepayment meters, as well as our load management receivers and communication devices are renowned for their functionality, long service lives and optimum costs over their entire service life.

This is possible thanks to our 3,074 employees worldwide, who commit their strengths, innovative power, agility, experience and freshness to serving our customers with renewed vigour every day.

Precision has a name: Landis+Gyr

< back                                                    up ^

Contact Webmaster
© Landis+Gyr 2004                          Last update: 12.12.05

E



Electricity      Heat/Cold      Demand Side      Payment                    Deutsch
Meters           Meters         Management       Systems

## Country Contacts
### North America                                                            Inte
                                                                             ┌──
                                                                             │Cour

| | |
|---|---|
| Country | North America |
| Your contact | Richard Mora |
| Address | Landis+Gyr Inc. |
| | 2800 Duncan Road |
| City | USA, Lafayette, Ind. 47904-5012 |
| Phone | 001 765 429 1432 |
| Fax | 001 765 429 1478 |
| email | executive@us.landisgyr.com |
| Additional | |
| Information | |

- Hoi
- Lar
- Coi
- Fac
- Pre
- Qu

> Information request

< back                                                          up ^

Contact Webmaster
© Landis+Gyr 2004                              Last update: 25.11.05

F

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| IP CO., LLC, | ) | |
| | ) | |
| Plaintiff, | ) | CIVIL ACTION FILE |
| | ) | |
| v. | ) | NO. 1:05-CV-2658-CC |
| | ) | |
| CELLNET TECHNOLOGY, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

### IP CO., LLC'S FIRST SET OF REQUESTS FOR
### PRODUCTION OF DOCUMENTS TO CELLNET TECHNOLOGY, INC.

NOW COMES IP CO., LLC ("IPCO"), and, pursuant to Rule 34 of the
Federal Rules of Civil Procedure, hereby serves the following requests for the
production of documents and things on Cellnet Technology, Inc. ("Cellnet").
Production shall take place at the offices of Duane Morris LLP, 1180 West
Peachtree Street, Suite 700, Atlanta, Georgia 30309 or at some other mutually
convenient location, within thirty (30) days of service of this request.

### DEFINITIONS

As used herein, the terms defined below shall have the following meaning:

1.     The terms "you," "your," "Cellnet," and "Cellnet Technology, Inc."
shall mean Cellnet Technology, Inc., its predecessors, successors, parents,

ATL/67231.1

subsidiaries and related companies, and shall include its present and former officers, directors, agents, employees, accountants, attorneys, investigators, consultants, assignees, licensees, and representatives.

2.    The term "IPCO" shall mean IP CO., LLC and its present and former officers, directors, agents, employees, and representatives.

3.    The term "Cellnet's Answer" shall mean the Answer, Affirmative Defenses, and Counterclaims of Cellnet Technology, Inc. filed in the above-styled Civil Action No.: 1:05-2658-CC, and any subsequent amendments thereto.

4.    The term "Gateway Server" means a server that provides or hosts a gateway between two or more networks.

5.    The term "Wireless Network System" means two or more networks connected by a Gateway Server where one or more of the networks is a wireless network.

6.    The term "UtiliNet" shall mean that system or systems designed, manufactured, sold, or offered for sale by Cellnet under the trade name "UtiliNet," including without limitation any earlier prototype, modification, version or predecessor of said system or systems.

7.    The terms "licensed" or "licensing" means any authorization to make, have made, use, sell or offer for sale any product or process: (i) the unlicensed manufacture, use, offer for sale, or sale of which would infringe any United States

-2-

or foreign patent; (ii) that is claimed in any United States or foreign patent; or

(iii) that is the subject of a trade secret, including but not limited to any agreement

(whether in the form of a grant, sublicense, bilateral contract, option, offer to make

a unilateral contract, stipulation in a legal action or other proceeding, statement that

patent rights will not be asserted in respect of a particular subject matter, or

agreement to sell or distribute any patented product) and any schedule, addendum,

or amendment thereto, and any modification thereof.

    8.    The terms "business entity" or "entity" shall mean firms, corporations,

partnerships, joint ventures, unincorporated associations, companies, businesses,

partnerships, proprietorships, or fictitious or trade names.

    9.    The term "date" shall mean the precise month, day, and year, if known,

or as precise a statement of the month, day, and year as is permitted by your

knowledge and the documents and information available to you.

    10.    The phrase "refer, reflect or relate to," with respect to any given

subject, shall mean constituting, containing, embodying, evidencing, reflecting,

identifying, stating, dealing with, or in any way pertinent to that subject, including

without limitation documents concerning the preparation of other documents.

    11.    The term "any" shall be deemed to include and encompass the words

"each" and "all." The use of the word "or" shall mean "and" as well as "or."

-3-

12.    The term "document" shall mean, in addition to its common meaning, the original and all non-identical copies of every writing or record of every type and description, however produced or reproduced, that are in your possession, custody, or control, or to which you have access, including, without limitation, correspondence, memoranda, tapes, stenographic or handwritten notes, electronic mail, e-mail, instant messaging correspondence, invoices, purchase orders, telegrams, telexes, studies, publications, films, microfilms, voice or sound recordings, computer records or data in whatever form they may be stored or kept, magnetic records, maps, reports, surveys, statistical compilations, tax returns, accounting or other work papers, invoices, receipts, checks, check stubs, accounts, deposit slips, and ledgers.

13.    The term "applicable time period" shall mean January 1, 1990 through the date of trial of this case.

14.    The term "facts" shall mean all facts, evidence, details or information of any type acquired by Cellnet, by any means.

15.    The term "communications" shall mean any and all written communications between two or more persons contained in any documents, or oral communications including, but not limited to, telephone communications, personal conferences or meetings between two or more persons.

ATL:67231.1

## INSTRUCTIONS

1.      Your obligation to respond to these requests shall be continuing to the full extent permitted under the applicable rules.

2.      If you contend that you are entitled on the basis of any claim of privilege to withhold any information or document in response to these requests, provide the following information with respect to such information:

      a.      For each document, identify the author or authors, all actual and intended recipients, the date the document, item, or information was created, and a description of the document, item, or information;

      b.      State the basis of the grounds for the claim of privilege;

      c.      Identify the person on whose behalf the claim of privilege is being asserted;

      d.      State the subject matter of the information or document sought to be withheld; and

      e.      Specify the request(s) to which the information or document is responsive.

3.      These requests seek documents and information that is within Cellnet's possession, custody or control.  To the extent that Cellnet is aware of information or documents responsive to these requests that is in the possession of Cellnet's affiliated business entities, the general subject matter of that information, the identity of the documents and the identity of the business affiliate with direct knowledge of the information or possession of the documents are deemed to be within Cellnet's possession, custody or control and responsive to these requests.

-5-

ATL 67231.1

4.     With regard to the terms defined herein, all terms used in the singular shall include the plural, and all terms used in the plural shall include the singular.

## REQUESTS FOR PRODUCTION

1.     Documents sufficient to identify any Wireless Network System, including but not limited to UtiliNet, designed, made, used, supplied, sold, licensed, leased or offered for sale, lease or license by Cellnet during the applicable time period.

2.     All documents that refer, reflect or relate to the system layout, structure, design, system operation, testing or construction of any Wireless Network System, including but not limited to the UtiliNet system, designed, made, used, supplied, sold, licensed, leased or offered for sale, lease or license by Cellnet during the applicable time period.

3.     All documents that refer, reflect or relate to the structure, design, operation, testing, control or construction of any component or subcomponent of any Wireless Network System, including but not limited to the UtiliNet system, designed, made, used, supplied, sold, licensed, leased or offered for sale, lease or license by Cellnet during the applicable time period.

4.     All documents that refer, reflect or relate to the software functional specifications of any Wireless Network System or any component or subcomponent thereof, including but not limited to the UtiliNet system, designed, made, used,

-6-

ATL:67231.1

supplied, sold, licensed, leased or offered for sale, lease or license by Cellnet during the applicable time period.

5.    All documents that refer, reflect or relate to the data flow of any Wireless Network System, or any component or subcomponent thereof, including but not limited to UtiliNet, designed, made, used, supplied, sold, licensed, leased or offered for sale, lease or license by Cellnet during the applicable time period.

6.    All documents that refer, reflect or relate to the layout or design of any computer or system network of any Wireless Network System, or any component or subcomponent thereof, including but not limited to UtiliNet, designed, made, used, supplied, sold, licensed, leased or offered for sale, lease or license by Cellnet during the applicable time period.

7.    All documents that refer, reflect or relate to the source code of any Wireless Network System, or any component or subcomponent thereof, including but not limited to the UtiliNet system.

8.    All documents that refer, reflect or relate to any changes made to the source code of any Wireless Network System, or any component or subcomponent thereof, including but not limited to the UtiliNet System.

9.    All documents that refer, reflect or relate to the data transmission paths, including but not limited to methods for message routing, communication protocols, data packet construction, or data packet types, used to transfer data between any

-7-

elements of any Wireless Network System, or any component or subcomponent thereof, including but not limited to UtiliNet, wherein any element of the system is made, designed, used, sold, supplied, licensed, leased or offered for sale, lease or license by Cellnet during the applicable time period.

10.    All documents that refer, reflect or relate to any previous version, modification, adaptation, or predecessor of the UtiliNet system, or to any changes made to any version, modification, adaptation, or predecessor system.

11.    All documents that refer, reflect or relate to any requests for proposal, bids, bid specifications, responses to requests for proposals, bid acceptance, contracts, and all amendments, modifications, revisions and additions to these documents, for any Wireless Network System, including but not limited to the UtiliNet system.

12.    All documents that refer, reflect or relate to the testing, alpha testing, beta testing, field testing, analysis or performance evaluation of any Wireless Network System, including but not limited to the UtiliNet system, during the applicable time period.

13.    All documents that refer, reflect or relate to any documents sent to any customers or prospective customers of any Wireless Network System, including but not limited to the UtiliNet system, including any correspondence, marketing materials, product specifications, functional specifications, licensing terms,

-8-

ATL 67231 1

responses to requests for proposals, bid submissions, quotes, specifications, or sale or lease terms.

14. All documents that refer, reflect or relate to any sale or lease, or any contract for sale or lease, awarded to Cellnet, its subsidiaries or affiliates regarding any Wireless Network System, including but not limited to UtiliNet, designed, made, used, supplied, sold, licensed, leased or offered for sale, lease or license by Cellnet during the applicable time period, including all amendments, modifications, revisions and additions to each contract.

15. All documents that refer, reflect or relate to the marketing, promotion, or advertisement of any Wireless Network System, including but not limited to UtiliNet, designed, made, used, supplied, sold, licensed, leased or offered for sale, lease or license by Cellnet during the applicable time period.

16. All documents that refer, reflect or relate to any market survey, marketing plans, marketing projections, market analysis, sales plans, or sales projections any Wireless Network System, including but not limited to UtiliNet, designed, made, used, supplied, sold, licensed, leased or offered for sale, lease or license by Cellnet during the applicable time period.

17. All documents that refer, reflect or relate to any licensing, sales, leases, or offers for sale or lease by Cellnet, its subsidiaries or affiliates of any Wireless

-9-

ATL:67211 1

Network System, including but not limited to UtiliNet, during the applicable time period.

18. All financial statements, balance sheets, sales figures, and profit and loss statements of Cellnet, or its predecessor entities, for each fiscal year during the applicable time period.

19. All documents from the applicable time period that refer, reflect or relate to any aspect of any negotiations with any other party concerning the sale or purchase of Cellnet or all or substantially all of Cellnet's assets during the applicable time period.

20. All documents from the applicable time period that refer, reflect or relate to communications or negotiations between Cellnet and another party concerning the merger, acquisition, purchase or sale of Cellnet or all or substantially all of Cellnet's assets during the applicable time period.

21. All prior art that Cellnet contends is material to the patentability, validity or enforceability of any claim of the '516 Patent or '062 Patent.

22. All prior art that Cellnet contends applies to this case in any way.

23. All documents that refer, reflect or relate to any valuation, profitability analysis, financial analysis, review or projection of any Wireless Network System, including but not limited to UtiliNet.

-10-

24. All documents from the applicable time period that refer, reflect or relate to any valuation, profitability analysis, financial analysis, review or projection of Cellnet or of any business unit or affiliate of Cellnet.

25. All documents from the applicable time period that refer, reflect or relate to any due diligence review performed of Cellnet or of any business unit of Cellnet.

26. All documents that refer, reflect or relate to any royalties paid by or received by Cellnet in connection with any technology associated with any Wireless Network System, including but not limited to UtiliNet.

27. All organizational charts of Cellnet, including without limitation any predecessor, parent or affiliated entities.

28. Organizational charts sufficient to identify the major responsibilities of employees, officers, directors, and agents of Cellnet.

29. Any organizational chart of Cellnet or list of Cellnet employees identifying persons involved with any Wireless Network System, including but not limited to UtiliNet.

30. All documents that refer, reflect or relate to the '516 Patent or '062 Patent.

31. All legal opinions upon which Cellnet relies as a defense to IPCO's allegations of infringement in this lawsuit.

-11-

ATL/67231 1

32.    All documents upon which Cellnet relies in interpreting any claims in the '516 Patent or the '062 Patent.

33.    All documents that refer, reflect or relate to any tests or analysis performed regarding:

        a.    the '516 Patent;

        b.    the '062 Patent; and

        c.    Cellnet's allegations of infringement in this lawsuit.

34.    All documents upon which Cellnet relies in support of any contention that:

        a.    the '516 Patent or the '062 Patent is unenforceable; and

        b.    any claim of the '516 Patent or the '062 Patent is invalid.

35.    All documents evidencing or referring to Cellnet's document retention policy or policies.

36.    All patents and patent applications disclosing any invention in the art of any Wireless Network System, including but not limited to UtiliNet, designed, made, used, supplied, sold, licensed, leased or offered for sale, lease or license by Cellnet in which Cellnet, or any of its employees, holds or has held any right, title, or interest.

37.    Documents sufficient to identify all officers, directors, and shareholders of Cellnet.

38.    All documents that refer, reflect or relate to any communications between Cellnet and any other entity regarding IPCO, the '516 Patent, the '062 Patent, or this litigation.

39.    All documents that refer, reflect or relate to Dr. Edwin Brownrigg or CommUnique.

40.    All documents that refer, reflect, or relate to Cellnet's allegations, counterclaims, contentions, claims, denials, or defenses set forth in Cellnet's Answer.

41.    All documents that refer, reflect or relate to the substance of all expert witness evidence that you intend to present at trial, including without limitation, all communications from or to each expert witness, drafts of any written report prepared by and/or for each expert witness, each written report prepared by and/or for each expert witness, each expert witness's *curriculum vitae*, all publications authored by each expert witness within the preceding ten (10) years, all invoices for services rendered by each expert witness, and all data, financial information, documents and tangible things considered by each expert witness.

42.    All documents considered by any expert witnesses, including, without limitation, all documents, witness statements, data, financial information and tangible things considered by each expert witness.

-13-

ATL\67231.1

43.   All documents that refer, reflect, or relate to any of Cellnet's responses to any of IPCO's interrogatories or that were consulted, reviewed or identified in connection with any of IPCO's interrogatories.

44.   All non-privileged documents that refer, reflect or relate to any of the subject matter in this litigation.

45.   All documents that are responsive to any document request served by Cellnet in this case.

This _22nd_ day of December, 2005.

DUANE MORRIS LLP

John C. Herman
   (Georgia Bar No. 348370)
Matthew C. Gaudet
   (Georgia Bar No. 287789)
Antony L. Sanacory
   (Georgia Bar No. 625195)
Michael Ridgway Jones
   (Georgia Bar No. 141258)

1180 West Peachtree Street, Suite 700
Atlanta, GA 30309-3448
(404) 253-6900

Attorneys for Plaintiff
IP CO., LLC

-14-

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| IP CO., LLC,                           ) | |
|                                        ) | |
|                                        ) | |
|          Plaintiff,                    ) | CIVIL ACTION FILE |
|                                        ) | |
|               v.                       ) | NO.  1:05-CV-2658-CC |
|                                        ) | |
| CELLNET TECHNOLOGY, INC.,              ) | |
|                                        ) | |
|          Defendant.                    ) | |
|                                        ) | |

## RULE 5.4 CERTIFICATE OF SERVICE

Pursuant to Local Rule 5.4, this is to certify that I have this day served all

current parties to the foregoing matter with (1) IP CO., LLC'S FIRST SET OF

INTERROGATORIES TO CELLNET TECHNOLOGY, INC.; and (2) IP CO.,

LLC'S FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS TO

CELLNET TECHNOLOGY, INC. by hand delivering copies of same to

defendant's counsel of record as follows:

> Nagendra Setty
> Christopher O. Green
> Olivia E. Marbutt
> JONES DAY
> 1420 Peachtree Street, N.E.
> Suite 800
> Atlanta, Georgia 30309-3053

- 1 -

ATL\67434.1

This Rule 5.4 Certificate has been electronically filed with the Clerk of

Court using the CM/ECF system which will automatically send e-mail notification

of such filing to all attorneys of record.

This 22nd day of December, 2005.

DUANE MORRIS LLP

S/John C. Herman
Georgia Bar No. 348370

1180 West Peachtree Street
Suite 700
Atlanta, Georgia 30309
(404) 253-6900 (telephone)
(404) 253-6901 (facsimile)

Attorneys for Plaintiff
IP CO., LLC

ATL\67434.1

DuaneMorris·

FIRM and AFFILIATE OFFICES

NEW YORK
LONDON
LOS ANGELES
CHICAGO
HOUSTON
PHILADELPHIA
SAN DIEGO
SAN FRANCISCO
BOSTON
WASHINGTON, DC
ATLANTA
MIAMI
PITTSBURGH
NEWARK
ALLENTOWN
WILMINGTON
HARRISBURG
PRINCETON

JOHN C. HERMAN
DIRECT DIAL: 404.253.6913
E-MAIL: jcherman@duanemorris.com

www.duanemorris.com

December 22, 2005

BY HAND DELIVERY

Mr. Nagendra Setty
JONES DAY
1420 Peachtree Street, N.E.
Suite 800
Atlanta, GA 30309-3939

> Re:  IPCO, LLC. v. Cellnet Technology, Inc.; United States
> District Court, Northern District of Georgia; Atlanta
> Division; Civil Action File No. 1:05-CV-2658-CC

Dear Nick:

Enclosed herewith are IPCO's (1) First Set of Interrogatories and (2) First Set of Requests for Production of Documents. We had elected to hold off on serving discovery until we had an opportunity to see if there was a possibility of an early resolution of the case. Based on our meeting this morning, we have concluded that there is not and are therefore moving forward.

Sincerely yours,

John C. Herman

JCH/tae

Enclosures

DUANE MORRIS LLP

1180 WEST PEACHTREE STREET, SUITE 700   ATLANTA, GA 30309-3448          PHONE 404 253.6900  FAX 404 253.6901
ATL\67456 1

G

# TABLE OF CONTENTS

## PATENT LOCAL RULES

**Page(s)**

**LPR 1:**  **General Provisions**

**LPR 1.1.**  **Title.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **PR-3**

**LPR 1.2.**  **Purpose, Scope and Construction.** . . . . . . . . . . . . . . . **PR-3**

**LPR 1.3.**  **Effective Date.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . **PR-3**

**LPR 2:**  **Confidentiality of Commercial or Technical Information**

**LPR 2.1.**  **Confidentiality Prior to Entry of Case**
**Specific Protective Order** . . . . . . . . . . . . . . . . . . . . . . **PR-3**

**LPR 2.2.**  **Stipulated Protective Orders** . . . . . . . . . . . . . . . . . . . . **PR-4**

**LPR 3:**  **Relationship to General Discovery Procedures**

**LPR 3.1.**  **Discovery Requests** . . . . . . . . . . . . . . . . . . . . . . . . . . . **PR-5**

**LPR  4:**  **Disclosure of Contentions**

**LPR 4.1.**  **Infringement Contentions** . . . . . . . . . . . . . . . . . . . . . . **PR-5**

**LPR 4.2.**  **Response to Infringement Contentions** . . . . . . . . . . . **PR-7**

**LPR 4.3.**  **Invalidity Contentions.** . . . . . . . . . . . . . . . . . . . . . . . . **PR-7**

**LPR 4.4.**  **Time for Disclosures** . . . . . . . . . . . . . . . . . . . . . . . . . . **PR-8**

**LPR 4.5.**  **Supplementing or Amending Contentions** . . . . . . . . . **PR-9**

**LPR 5:**     **Bifurcation and Willful Infringement Issues**

**LPR 5.1.**     **Presumption Against Bifurcation** ................. PR-9

**LPR 5.2.**     **Discovery of the Substance of Opinions of Counsel** .. PR-9

**LPR 5.3.**     **No Disqualification** ........................... PR-10


**LPR 6:**     **Claim Construction Proceedings**

**LPR 6.1.**     **Exchange of Proposed Terms** ................... PR-11

**LPR 6.2.**     **Exchange of Preliminary Constructions** ......... PR-11

**LPR 6.3.**     **Joint Claim Construction Statement** ............ PR-12

**LPR 6.4.**     **Completion of Claim Construction Discovery** ..... PR-13

**LPR 6.5.**     **Claim Construction Briefs** ..................... PR-13

**LPR 6.6.**     **Claim Construction Hearing** .................... PR-13

**LPR 6.7.**     **Discovery after Claim Construction** ............. PR-13


**LPR 7:**     **Expert Witnesses**

**LPR 7.1.**     **Disclosure of Experts and Expert Reports** ........ PR-13

**LPR 7.2.**     **Depositions of Experts** ......................... PR-14

**LPR 7.3.**     **Presumption Against Supplementation
            or Amendment** ............................... PR-14

## LPR 1:      GENERAL PROVISIONS

## LPR l.1.     TITLE.

These are the Local Rules of Practice for Patent Cases before the United States District Court for the Northern District of Georgia.  They may be cited as "Patent L.R. ___."

## LPR 1.2.     PURPOSE, SCOPE AND CONSTRUCTION.

(a) These rules are intended to supplement the Civil Local Rules of this District to facilitate the speedy, fair and efficient resolution of patent disputes.

(b) These rules apply to all civil actions filed in or transferred to this Court which allege infringement of a utility patent in a complaint, counterclaim, cross-claim or third party claim, or which seek a declaratory judgment that a utility patent is not infringed, is invalid or is unenforceable.

(c) The Court may modify the obligations or deadlines set forth in these Patent Local Rules based on the circumstances of any particular case, by stipulation of all parties, on motion of a party or on the Court's own motion.  The parties shall meet and confer prior to filing any motion seeking a modification of the obligations or deadlines set forth in these Patent Local Rules.  Such meeting shall take place prior to the filing of the Joint Preliminary Report and Discovery Plan, and any such motion shall be filed no later than the filing of the Joint Preliminary Report and Discovery Plan.

## LPR 1.3.     EFFECTIVE DATE.

These Patent Local Rules shall take effect on July 15, 2004 and shall apply to any case filed or transferred to this Court thereafter.  Relevant provisions of these rules may be applied to any pending case by the Court, on its own motion or on motion by any party.

## LPR 2:      CONFIDENTIALITY OF COMMERCIAL OR TECHNICAL INFORMATION

## LPR 2.1.     Confidentiality Prior to Entry of Case Specific Protective Order.

(a) If any document or information produced is deemed confidential by the producing party and if the Court has not entered a protective order, until a protective order is issued by the Court, the document shall be marked "Confidential – Subject to Protective Order" by the disclosing party and disclosure of the confidential document or information shall be limited to each party's outside attorney(s) of record and the employees of such outside attorney(s).

(b) If a party is not represented by an outside attorney, disclosure of the confidential document or information shall be limited to one designated "in house" attorney, whose identity and job functions shall be disclosed to the producing party five (5) court days prior to any such disclosure, in order to permit any motion for protective order or other relief regarding such disclosure.

(c) Pending entry of a protective order (by stipulation or on motion), all persons to whom disclosure of a confidential document or information is made under this local rule shall not disclose any such protected information to any person not entitled to have access to it. After entry of such an order, the limits on disclosure provided by such order shall apply to the disclosure of documents otherwise produced pursuant to this rule.

(d) Documents filed with the clerk containing or disclosing information protected by this rule shall be filed under seal with a notation that the pleading is not to be made available to members of the public.

(e) Nothing in this rule shall affect the burden of proof or persuasion imposed by law on a party seeking to limit or prevent disclosure or use of a document deemed confidential by that party.

## LPR 2.2. Stipulated Protective Orders

(a) No later than the time for filing of the Joint Preliminary Report and Discovery Plan pursuant to Local Rule 16.2, the parties shall meet and confer to prepare a stipulated protective order to govern the production of commercially or technologically sensitive information in the case.

(b) Notwithstanding any provision in a protective order limiting the use of a document for purposes of a single lawsuit, the fact that an attorney or law firm has had access to a document covered by a protective order in one case shall not furnish a basis for disqualifying such lawyer in another case.

## LPR 3:    RELATIONSHIP TO GENERAL DISCOVERY PROCEDURES

### LPR 3.1.    Discovery Requests

a) These Rules do not excuse any party from responding to any proper discovery request made under the Federal Rules of Civil Procedure within the time required by such rules, except as follows:

(1) Requests seeking to elicit a party's claim construction position;

(2) Requests seeking to elicit from the patent claimant a comparison of the asserted claims and the accused technology;

(3) Requests seeking to elicit from an accused infringer a comparison of the asserted claims and the prior art; and

(4) Requests seeking to elicit from an accused infringer the identification of any opinions of counsel, and related documents, that it intends to rely upon as a defense to an allegation of willful infringement.

(b) Disclosure of such information shall instead be made pursuant to these rules, absent stipulation of the parties or other order of the Court.

## LPR 4:    DISCLOSURE OF CONTENTIONS

### LPR 4.1.    INFRINGEMENT CONTENTIONS

(a) A party claiming patent infringement shall serve on all parties a Disclosure of Infringement Contentions at the time specified in these Rules. A separate Disclosure shall be made for each party accused of infringing a patent-in-suit.

(b) The Disclosure of Infringement Contentions shall contain the following information:

(1) Each claim of each patent in suit that is allegedly infringed by each opposing party;

(2) Separately for each asserted claim, each accused apparatus, method, composition or other instrumentality ("Accused Instrumentality") of each accused party of which the claiming party is aware. This identification shall be as specific as possible, with each apparatus identified by name or model number, if known, and each method identified by name, if known;

(3) A chart identifying specifically where each element of each asserted claim is found within each Accused Instrumentality, including for each element that such party contends is governed by 35 U.S.C. § 112(6), the identity of the structure(s), act(s), or material(s) in the Accused Instrumentality that performs the claimed function;

(4) Whether each element of each asserted claim is claimed to be literally present, present under the doctrine of equivalents, or both, in the Accused Instrumentality; and

(5) For any patent that claims priority to an earlier application, the priority date to which each asserted claim allegedly is entitled.

(c) With the Disclosure of Infringement Contentions, the party claiming patent infringement must produce to each opposing party or make available for inspection and copying:

(1) Documents sufficient to evidence each instance of providing the claimed invention to a third party, by sale, offer to sell, or other manner of transfer, prior to the date of application for the patent in suit;

(2) All documents evidencing the conception, reduction to practice, design, and development of each claimed invention, which were created on or before the date of application for the patent in suit or the priority date identified pursuant in the Disclosure, whichever is earlier;

(3) A copy of the file history for each patent in suit; and

(4) A copy of all non-U.S. patents claiming a common priority with any patent asserted in the case, together with a copy of all prior art cited in such non-U.S. patent proceedings.

(d) A party's production of a document as required herein shall not constitute an admission that such document evidences or is prior art under 35 U.S.C. § 102.

## LPR 4.2.    RESPONSE TO INFRINGEMENT CONTENTIONS

(a) A party opposing a claim of infringement shall make the following Response to Infringement Contentions within the time period provided by these rules.

(b) The Response to Infringement Contentions shall include a chart responsive to the claims chart contained within the Disclosure of Infringement Contentions, and shall either acknowledge or deny whether each element of each asserted claim is found within each Accused Instrumentality;(b) The Response to Infringement Contentions shall include a copy of source code, specifications, schematics, flow charts, artwork, formulas, or other documentation sufficient to show the operation or composition of an Accused Instrumentality identified in the Disclosure of Infringement Contentions within the time period specified by these Rules.

## LPR 4.3.    INVALIDITY CONTENTIONS.

(a) Each party opposing a claim of patent infringement, and each party seeking a declaratory judgment of patent invalidity, shall serve on all parties its Disclosure of Invalidity Contentions at the time specified in these rules, which shall contain the following information:

(1) The identity of each item of prior art that allegedly anticipates each asserted claim or renders it obvious.

(i) Prior art under 35 U.S.C. § 102(b) shall be identified by specifying the item offered for sale or publicly used or known, the date the offer or use took place or the information became known, and the identity of the person or entity which made the use or which made and received the offer, or the person or entity which made the information known or to whom it was made known.

(ii) Prior art under 35 U.S.C. § 102(f) shall be identified by providing the name of the person(s) or entity(ies) from whom and the circumstances under which the invention or any part of

PR-7

it was derived.

(iii) Prior art under 35 U.S.C. § 102(g) shall be identified by providing the identities of the person(s) or entity(ies) involved in and the circumstances surrounding the making of the invention before the patent applicant(s);

(2) For each item of prior art disclosed, whether each item of prior art anticipates each asserted claim or renders it obvious. If the disclosing party contends that a combination of items of prior art makes a claim obvious, each such combination, and the motivation to combine such items, shall be identified.

(3) A chart identifying where specifically in each alleged item of prior art each element of each asserted claim is found;

(4) Any grounds of invalidity based on any applicable provision of 35 U.S.C. § 112.

(b) The Disclosure shall include a copy of each item of prior art identified in the Disclosure comprising a printed publication if such item of prior art does not appear in the file history of the patent(s) at issue. To the extent any such item is not in English, an English translation of the portion(s) relied upon shall be produced.

## LPR 4.4.    TIME FOR DISCLOSURES

(a) A plaintiff pleading infringement of a patent shall first make its Disclosure of Infringement Contentions within thirty (30) days after filing of the Joint Preliminary Report and Discovery Plan. A plaintiff seeking a declaratory judgment of patent invalidity or non-infringement shall likewise first make its Disclosure of Invalidity Contentions within thirty (30) days after filing of the Joint Preliminary Report and Discovery Plan.

(b) A defendant responding to a declaratory judgment action and pleading infringement of a patent in a counterclaim shall first make its Disclosure of Infringement Contentions within thirty (30) days after service of the plaintiff's Disclosure of Invalidity Contentions. A defendant opposing a claim of patent infringement shall first make its Disclosure of Invalidity Contentions and its Response to Infringement within thirty (30) days after the plaintiff's Disclosure of Infringement Contentions.

(c) A plaintiff seeking a declaratory judgment of patent invalidity or non-infringement, and responding to a counter-claim of patent infringement, shall produce its Response to Infringement Contentions within twenty (20) days after the defendant's Disclosure of Infringement Contentions.

## LPR 4.5.    SUPPLEMENTING OR AMENDING CONTENTIONS.

(a) Disclosures and Responses shall have such binding effect on a party as a response to an interrogatory under Rule 33 of the Federal Rules of Civil Procedure.

(b) Each party's Disclosures or Response shall be supplemented or amended pursuant to the rules for supplementation and amendment of discovery responses generally provided for under the Federal Rules of Civil Procedure.

(c) In addition, any amendment or modification of the Disclosures or Responses which a party believes are required in light of a either a claim construction ruling by the Court or a modification of an opposing party's Disclosure or Response shall be made within thirty (30) days of service of such ruling, Disclosure or Response.

## LPR 5:    BIFURCATION AND WILLFUL INFRINGEMENT ISSUES

## LPR 5.1.    PRESUMPTION AGAINST BIFURCATION

There shall be a rebuttable presumption against the bifurcation of damages from liability issues in patent cases for purposes of either discovery or trial.

## LPR 5.2.    DISCOVERY OF THE SUBSTANCE OF OPINIONS OF COUNSEL

(a) The substance of any advice of counsel tendered in defense to a charge of willful infringement, and any other information which might be deemed to be within the scope of a waiver attendant to disclosure of such advice, shall not be discoverable until the earlier of:

(1) five (5) days after a ruling on summary judgment indicating a triable issue of fact to which willfulness would be relevant; or

(2) thirty (30) days prior to the close of fact discovery under the discovery track to which the case is assigned.

(b) On the day such willfulness information becomes discoverable, the party relying on such advice shall produce the following:

(1) a copy of all written opinions to be relied on by the party opposing the claim of infringement;

(2) a copy of all materials or information provided to the attorney in connection with the advice;

(3) a copy of all written attorney-work product developed in the course of preparation of the opinion and which work product was disclosed to the client;

(4) identification of the date, sender and recipient (but not necessarily the substance) of all written or oral communications between the attorney or law firm rendering any opinions to be relied on, which communications discuss the same subject matter as such opinion.

(c) After such willfulness information becomes discoverable, a party claiming willful infringement shall be entitled to take the deposition of any attorneys rendering the advice relied on and any persons who received such advice, including but not limited to any person who claims to have relied on such advice.

(d) These rules contain no presumption as to whether any materials other than those specifically required to be produced by this rule are, in fact, discoverable or subject to the scope of the waiver of any attorney client privilege. Resolution of any dispute over disclosure of further material shall be left to the Court.

## LPR 5.3.    NO DISQUALIFICATION

(a) An individual lawyer who rendered an opinion tendered in defense of a charge of willful infringement should not, absent express permission from the Court, examine witnesses or otherwise appear as an advocate in front of a jury where the jury will be determining the question of willful infringement.

(b) An individual lawyer involved in the prosecution of a patent-in-suit and whose conduct in connection with such prosecution is to be determined by the trier of fact should not, absent express permission from the Court, examine witnesses or otherwise appear as an advocate in front of the trier of fact where the trier of fact will make any determination of the question of inequitable conduct with respect to that patent-in-suit.

(c) No other disqualification or limitation on the participation of an individual lawyer should be required solely based on the fact that the lawyer rendered an opinion tendered in defense of a charge of willful infringement or the fact that there is a claim of inequitable conduct with regard to a patent in which the lawyer was involved in the prosecution of the particular patent-in-suit *unless* the party moving for disqualification or limitation of participation shall demonstrate a basis for such under the Georgia Rules of Professional Conduct or applicable case authority, or shall otherwise show good cause for such disqualification or limitation of participation.

(d)  With regard to motions made pursuant to (c), counsel shall not be disqualified or limited from participation in the case,  pursuant to these rules, prior to a ruling on such a motion.

## LPR 6:    CLAIM CONSTRUCTION PROCEEDINGS

### LPR 6.1.    EXCHANGE OF PROPOSED TERMS

(a) Not later than ninety (90) days after filing of the Joint Preliminary Report and Discovery Plan, each party shall simultaneously exchange a list of claim terms, phrases, or clauses which that party contends should be construed by the Court, and identify any claim element which that party contends should be governed by 35 U.S.C. § 112(6).

(b) The parties shall thereafter meet and confer for the purposes of finalizing this list, narrowing or resolving differences.

### LPR 6.2.    EXCHANGE OF PRELIMINARY CONSTRUCTIONS

(a) Not later than twenty (20) days after the exchange of Proposed Terms, for Construction, the parties shall simultaneously exchange a preliminary proposed construction of each claim term, phrase, or clause which any party has identified for claim construction purposes.  Each such Preliminary Claim Construction shall also, for each element which any party contends is governed by 35 U.S.C. § 112(6), identify the structure(s), act(s),

or material(s) in the specification corresponding to that element.

(b) At the same time the parties exchange their respective Preliminary Claim Constructions they shall each also provide a preliminary identification of extrinsic evidence, including without limitation, dictionary definitions, citations to learned treatises and prior art, and testimony of percipient and expert witnesses intended to support the respective claim constructions. The parties shall identify each such item of extrinsic evidence by production number or produce a copy of any such item not previously produced. With respect to any such witness, percipient or expert, the parties shall also provide a brief description of the substance of that witness' proposed testimony.

(c) The parties shall thereafter meet and confer for the purposes of narrowing the issues and finalizing preparation of a Joint Claim Construction Statement.

## LPR 6.3.    JOINT CLAIM CONSTRUCTION STATEMENT

(a) Not later than one hundred and thirty (130) days after the filing of the Joint Preliminary Report and Discovery Plan, the parties shall complete and file a Joint Claim Construction Statement.

(b) The Joint Claim Construction Statement shall contain the following information:

(1) The construction of those claim terms, phrases, or clauses on which the parties agree;

(2) Each party's proposed construction of each disputed claim term, phrase, or clause, together with an identification of all references from the specification or prosecution history that support that construction, and an identification of any extrinsic evidence known to the party on which it intends to rely either to support its proposed construction of the claim or to oppose any other party's proposed construction of the claim;

(3) The anticipated length of time necessary for the Claim Construction Hearing;

(4) Whether any party proposes to call one or more witnesses, including experts, at the Claim Construction Hearing, the identity of each such witness, and for each expert, a summary of each opinion to be offered in sufficient detail to permit a meaningful deposition of that expert. No other Rule 26 report or disclosure shall be required for testimony directed solely towards claim construction.

PR-12

### LPR 6.4.  COMPLETION OF CLAIM CONSTRUCTION DISCOVERY

(a) No later than fifteen (15) days after service and filing of the Joint Claim Construction Statement, the parties shall complete all discovery relating to claim construction, including any depositions with respect to claim construction of any witnesses, including experts, identified in the Joint Claim Construction Statement.

(b) Discovery from an individual on claim construction issues shall not prevent a prior or subsequent deposition of the same individual on other issues.

### LPR 6.5.  CLAIM CONSTRUCTION BRIEFS

(a) Not later than thirty (30) days after serving and filing the Joint Claim Construction Statement, each party shall serve and file an opening brief and any evidence supporting its claim construction.

(b) Not later than twenty (20) days after service upon it of an opening brief, each party shall serve and file its responsive brief and supporting evidence.

### LPR 6.6.  CLAIM CONSTRUCTION HEARING

Subject to the convenience of the Court's calendar, the Court shall conduct a Claim Construction Hearing to the extent the Court believe a hearing is necessary for construction of the claims at issue.

### LPR 6.7.  DISCOVERY AFTER CLAIM CONSTRUCTION

If at the time the Court issues its claim construction ruling, there are fewer than thirty (30) days left for discovery pursuant to the discovery track to which the case was assigned pursuant to the Local Rules, the parties shall have an additional forty-five (45) days in which to take discovery after the Court files and serves its claim construction ruling.

### LPR 7:  EXPERT WITNESSES

### LPR 7.1.  DISCLOSURE OF EXPERTS AND EXPERT REPORTS

(a) For issues other than claim construction to which expert testimony shall be directed, expert witness disclosures and depositions shall be governed by this rule.

(b) No later than thirty (30) days after (1) the normal close of discovery pursuant to the discovery track to which the case was assigned, or (2) the close of discovery after claim construction, which ever is later, each party shall make its initial expert witness disclosures required by Rule 26 on the issues on which each bears the burden of proof;

(c) No later than thirty (30) days after the first round of disclosures, each party shall make its initial expert witness disclosures required by Rule 26 on the issues on which the opposing party bears the burden of proof;

(d) No later than ten (10) days after the second round of disclosures, each party shall make any rebuttal expert witness disclosures permitted by Rule 26.

### LPR 7.2.    DEPOSITIONS OF EXPERTS

Depositions of expert witnesses disclosed under this Rule shall commence within seven (7) days of the deadline service of rebuttal reports and shall be completed within thirty (30) days after commencement of the deposition period. If the party taking the deposition agrees to pay the reasonable travel expenses of the expert, and absent good cause otherwise shown, the party designating the expert shall make its expert witness available for deposition in this District.

### LPR 7.3.    PRESUMPTION AGAINST SUPPLEMENTATION OR AMENDMENT

Because of the complexity of the issues often present in patent cases, amendments or supplementation to expert reports after the deadlines provided here are presumptively prejudicial and shall not be allowed unless (a) the tendering party shows cause that the amendment or supplementation could not reasonably have been made earlier and (b) all reasonable steps are made to ameliorate the prejudice to the responding party.

H

# EXHIBIT H

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| IPCO, LLC, | ) |
| | ) |
| Plaintiff, | ) CIVIL ACTION FILE |
| | ) |
| v. | ) NO. 1:05-CV-2658-CC |
| | ) |
| CELLNET TECHNOLOGY, INC. | ) |
| | ) |
| Defendant. | ) |
| | ) |

PLAINTIFF IPCO, LLC'S PRELIMINARY
DISCLOSURE OF INFRINGEMENT CONTENTIONS

NOW COMES plaintiff IPCO, LLC ("IPCO") and, pursuant to Local Patent

Rule 4.1, hereby serves its "Preliminary Disclosure of Infringement Contentions"

to defendant Cellnet Technology, Inc. ("Cellnet").

## I.  Disclosure of Asserted Claims and Preliminary Infringement Contentions

IPCO's Preliminary Infringement Contentions, including the attached claim

chart and the identification of infringed claims and Accused Instrumentalities, are

preliminary in nature. The accused products identified below include only those

Cellnet products of which IPCO is aware of at this time. IPCO has served

discovery on Cellnet for information concerning the full scope of Cellnet's

infringing activities, but Cellnet has yet to produce to IPCO documents detailing

Cellnet's infringement. Therefore, as this case progresses, IPCO reserves the right
to supplement, amend, add to or delete from these initial disclosures.

In further response, IPCO supplies the following information:

### A.   Information Responsive to Patent L.R. 4.1(b)(1):

For the independent claims, IPCO asserts independent Claims 1, 6, 10 and
15 of U.S. Patent No. 6,249,516 (the "'516 Patent") against Cellnet. At this time,
IPCO believes that some or all of the dependent claims falling under the respective
independent claims are being infringed by Cellnet as well. Rather than detailing
how each dependent claim is infringed, IPCO relies on the infringement contention
for the corresponding independent claim set forth in detail herein.

### B.   Information Responsive to Patent L.R. 4.1(b)(2):

IPCO asserts that Cellnet's UtiliNet System, including but not limited to the
InfiNet application, and any associated software sold, licensed, or leased or offered
for sale, license or lease, and any other Cellnet systems similar thereto that have
not yet been disclosed by Cellnet in discovery (hereinafter, "Accused
Instrumentality"), infringe, literally or by way of the doctrine of equivalents, each
asserted claim of the '516 Patent.

### C.   Information Responsive to Patent L.R. 4.1(b)(3):

A chart identifying specifically where each element of each asserted claim is
found within each Accused Instrumentality is attached hereto as Exhibit A.

2

ATL/6836 1

**D.    Information Responsive to Patent L.R. 4.1(b)(4):**

IPCO contends that each asserted claim is infringed, literally or by way of

the doctrine of equivalents, by the Accused Instrumentality, as indicated by the

infringement claim chart attached hereto as Exhibit A.

**E.    Information Responsive to Patent L.R. 4.1(b)(5):**

The '516 Patent is a division of application No. 08/760,895 filed on

December 6, 1996. IPCO contends that each asserted claim of the '516 Patent is

entitled to the claimed December 6, 1996 priority date.

**II.    Document Production Accompanying Infringement Contentions**

IPCO has already produced or is producing documents in conjunction with

this disclosure pursuant to Patent L.R. 4.1(c) as follows:

**A.    Documents Responsive to Patent L.R. 4.1(c)(1):**

IPCO has already produced documents responsive to Patent L.R. 4.1(c)(1)

(IPCO 000357-000499; 000677-000846).

**B.    Documents Responsive to Patent L.R. 4.1(c)(2):**

At this time, IPCO does not have in its possession, custody or control

documents responsive to Patent L.R. 4.1(c)(2).

**C.    Documents Responsive to Patent L.R. 4.1(c)(3):**

IPCO has already produced documents responsive to Patent L.R. 4.1(c)(3)

(IPCO 000101-000356; 000500-000676).

3

**D.    Documents Responsive to Patent L.R. 4.1(c)(4):**

At this time, IPCO does not have in its possession, custody or control

documents responsive to Patent L.R. 4.1(c)(4).

This 20th day of January, 2006.

DUANE MORRIS LLP

John C. Herman
(Georgia Bar No. 348370)
Matthew C. Gaudet
(Georgia Bar No. 287789)
Antony L. Sanacory
(Georgia Bar No. 625195)
Michael Ridgway Jones
(Georgia Bar No. 141258)

1180 W. Peachtree Street
Suite 700
Atlanta, GA 30309-3448
(404) 253-6900 (telephone)
(404) 253-6901 (facsimile)

Attorneys for Plaintiff
IPCO, LLC

## CERTIFICATE OF SERVICE

The undersigned counsel hereby certifies that, on January 26, 2006, a true

and exact copy of the foregoing PLAINTIFF IPCO, LLC'S PRELIMINARY

DISCLOSURE OF INFRINGEMENT CONTENTIONS was sent First Class Mail,

postage prepaid, upon Defendant's counsel of record addressed as follows:

> Mr. Nagendra Setty
> Mr. Christopher O. Green
> Fish & Richardson, P.C.
> 19th Floor
> 1230 Peachtree Street
> Atlanta, GA 30309

This 20th day of January, 2006.

Michael Ridgway Jones

ATL\68361 1

## CERTIFICATE OF SERVICE

I, Sean P. Hayes, hereby certify that on January 23, 2006, a true and correct copy

of **DECLARATION OF SEAN P. HAYES IN SUPPORT OF THIRD-PARTY**

**LANDIS+GYR INC.'S MOTION TO QUASH SUBPOENA** was caused to be served

on the attorneys of record at the following addresses as indicated:

### VIA HAND DELIVERY

Gary W. Lipkin, Esq.
Duane Morris LLP
1100 North Market Street
Wilmington, DE 19801-1246

By: _____

Sean P. Hayes

4