## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

IP CO., LLC,                               )
                                          )
                                          )
            Plaintiff,                    )        Civil Action No.: 1:06-mc-00012 SLR
                                          )
        v.                                )
                                          )
CELLNET TECHNOLOGY, INC.,                 )
                                          )
            Defendant.                    )
_____          )

### IPCO, LLC'S RESPONSE IN OPPOSITION TO THIRD-PARTY
### LANDIS+GYR, INC.'S MOTION TO QUASH SUBPOENA

NOW COMES IP Co., LLC ("IPCO"), Plaintiff in the above-captioned action, and

hereby responds to (the "Response") to Third-Party Landis+Gyr, Inc.'s Motion to Quash

Subpoena (the "Motion"), which was filed by Landis+Gyr, Inc. ("L+G") on January 23, 2006.

The Motion was filed prematurely and improperly, before L+G attempted to resolve this

discovery issue in good faith, as is required by Local Rule 7.1.1. The Motion is also baseless

and, in large part, moot. IPCO has proposed several solutions to L+G that would eliminate the

concerns raised in the Motion. In addition, L+G filed the Motion apparently before L+G made

any internal effort to confirm the quantity and nature of responsive documents, and L+G refuses

to undertake this preliminary effort, making it difficult – if not impossible – to determine

whether any of the issues in the Motion regarding the subpoena are even accurate. Nonetheless,

L+G has refused to withdraw the Motion despite repeated requests from IPCO. Accordingly,

IPCO requests that the Court deny the Motion and award IPCO costs and fees incurred in

opposing the Motion.

## I.    BACKGROUND.

On December 29, 2005, IPCO served a subpoena on L+G (the "Subpoena") (*Exhibit A*).[1] The Subpoena was served in connection with a lawsuit pending in the Northern District of Georgia (the "Georgia Lawsuit") where IPCO has alleged that certain of Cellnet's (i.e., the Defendant's) products infringe IPCO's U.S. Patent No. 6,249,516, entitled Wireless Network Gateway and Method for Providing Same (the "'516 Patent").

There is no reason to assume that documents in L+G's possession would be duplicative of documents that will be produced by the Defendant in the Georgia Lawsuit, based solely on the fact the L+G is a customer of Cellnet. The Subpoena contains eleven limited document requests narrowly tailored to documents and information bearing on the technology at issue in the Georgia Lawsuit, technology that Cellnet has marketed to L+G. In the Georgia Lawsuit, IPCO has also served document requests on Cellnet, the Defendant in the Georgia Lawsuit, and Cellnet has refused to produce all or a significant subset of nearly every single category of documents requested from Cellnet, particularly those categories of documents that may be similar to the requests in the Subpoena.[2] In addition, Cellnet has refused to explain which responsive documents that may have been in Cellnet's possession at one point in time, but that are now destroyed, making it nearly impossible for IPCO to know whether any potential overlap that once existed now remains. Therefore, it is unlikely that the collection of documents in L+G's

---

[1]    L+G's Motion states incorrectly that the Subpoena was issued on January 13, 2006.

[2]    For example, Cellnet has refused to produce any document that pre-dates July 23, 2004, whereas the Subpoena requests numerous documents pre-dating July 23, 2004. Cellnet has refused to produce any information regarding its predecessors-in-interest, whereas the Subpoena requests information related to L+G's dealings with Cellnet's predecessors-in-interest. In addition, Cellnet has refused to produce numerous categories of documents relating to its customers, of which L+G is one, and Cellnet has refused to produce any information regarding any of its technology, except one of its product lines.

possession would be duplicative of Cellnet's production or that IPCO could know which requests would be duplicative. L+G is fully aware of this fact because L+G's counsel also represents the Defendants in the Georgia Lawsuit.

L+G never raised any concerns with IPCO before it filed the Motion. The Subpoena originally requested that documents be produced on January 13, 2006. However, on January 11, 2006, counsel for L+G requested an extension of the January 13 production date until January 23, 2006 to respond to the Subpoena. IPCO granted the requested extension: L+G never once expressed any concerns regarding the Subpoena. *See Exhibit B*. Instead of responding to the Subpoena, as counsel for L+G indicated L+G would do, on January 23, 2006, L+G filed the Motion raising for the first time three issues: (1) location of production; (2) protective order; and (3) allegations that the Subpoena was duplicative of discovery in the Georgia Lawsuit and was overly burdensome.

IPCO has attempted to engage L+G in good faith efforts to resolve the issues in the Motion. On February 1, 2006, IPCO sent a letter (*Exhibit C*) to L+G regarding the issues (location of production, protective order and alleged duplication and burden) raised in the Motion. In the February 1 Letter, IPCO suggested, among other things, the following: (a) that L+G make the production in Indiana, near L+G's home office, if the production would be voluminous; (b) that the parties agree to a protective order similar to the one being negotiated by IPCO and Cellnet in the Georgia Lawsuit; and (c) that IPCO would work with L+G to minimize any duplication of production. IPCO also noted that L+G had an obligation to attempt to resolve the issues in good faith prior to filing its Motion and that L+G should, therefore, withdraw the Motion.

IPCO has made multiple requests that L+G provide some detail regarding the concerns raised in the Motion so that IPCO could work with L+G in resolving them. Telephone discussions were held between counsel for L+G and counsel for IPCO on February 7, 2006 and February 8, 2006. During those discussions, it became clear that the parties would resolve the first two issues raised in the Motion, and that the only remaining concern for L+G was duplication. As a result, during the February 7 and 8 phone calls, and in a letter to counsel for L+G sent on February 10, 2006 (*Exhibit D*), IPCO requested that L+G undertake two preliminary efforts:

> (1)     Identify which requests it believed were duplicative and burdensome, and explain why it believed such requests were duplicative and burdensome. In connection with this request, IPCO explained that it did not believe there was much overlap because Cellnet has refused to produce all or a significant subset of nearly every single category of documents requested in the Subpoena that may have some overlap, and Cellnet has refused to explain which responsive documents it may have destroyed, so IPCO would have difficulty even knowing whether there would be any overlap; and

> (2)     Determine whether L+G even possesses a large number of documents that would be responsive to the Subpoena, and whether such documents would even be duplicative of the documents that Cellnet has agreed to produce.

In other words, IPCO simply requested that L+G be specific regarding its concerns and confirm the veracity of the allegations in its Motion that duplication or a burden even existed. This initial step of understanding the nature of any alleged burden is a necessary step to resolving L+G's concerns.

Instead of engaging in these good faith efforts, L+G simply responded by email (*Exhibit E*), stating that L+G has no obligation to assess potentially responsive documents, and ignoring the facts that (a) Cellnet, through the same counsel as L+G, has refused to produce nearly all of the documents that could potentially be duplicative and (b) Cellnet may have destroyed potentially duplicative documents but refuses to identify which documents may have been

destroyed. L+G's proposal was for IPCO to re-write the requests in the Subpoena, without offering any indication which requests it found to be duplicative and without explaining how the requests could be limited in light of the practical issues caused by Cellnet's refusal to produce documents and Cellnet's refusal to identify destroyed documents.

## II.    THE MOTION IS PREMATURE AND IMPROPER.

As noted above, counsel is required to certify that it has made a good faith attempt to resolve the issues raised by the Motion. L+G has neither made such a good faith attempt, and, correspondingly, counsel for L+G has not filed a Local Rule 7.1.1 certification. Indeed, L+G has refused to even determine whether (a) L+G has any responsive documents and (b) any characteristic of such responsive documents (i.e., quantity, confidentiality) would make producing such documents duplicative or burdensome. *See Exhibit E.* Accordingly, at this juncture, it would be impossible to even confirm whether the allegations in L+G's Motion regarding location of production, protective order and duplication and burden are even accurate, let alone begin the process of resolving the issues raised by L+G. Therefore, the Motion is premature, improper, and should be denied.

## III.    THE MOTION IS WITHOUT MERIT.

As noted above, IPCO has proposed solutions to address the issues raised by L+G, particularly the issues of location of production (IPCO offered to retrieve such documents from Indiana if they are numerous) and the protective order (IPCO and L+G have agreed in concept to a protective order similar to the one between IPCO and Cellnet in the Georgia Lawsuit). With respect to the third issue raised by L+G – duplication and burden – L+G has refused to even make a preliminary assessment of the documents in its possession that would be responsive, and L+G has been unable to articulate with any specificity which requests in the Subpoena it finds objectionable. This is particularly important in light of the fact that Cellnet has refused to

produce nearly every category of documents requested in the Subpoena, and Cellnet has refused

to identify which categories of documents may have been destroyed.  L+G's allegations,

therefore, are resolved and/or completely unverifiable, and cannot be the basis for the relief

sought in the Motion.  Moreover, even if the grounds upon which L+G bases its Motion were

verifiable, they are not adequate grounds to refuse production.  *See Heritage Building Group,*

*Inc. v. Plumstead Township*, 1997 U.S. Dist. LEXIS 1383, at *4-5 (E.D. Pa. 1997) (holding that,

since subpoenaed party had relevant, responsive information, he was required to produce it

regardless of fact that information might be available from other sources); 6 James Wm. Moore

et al., *Moore's Federal Practice* § 26.60[3] (3d ed.) ("The fact that the information sought might

already be in the possession of the requesting party or obtainable from another source is not a bar

to discovery of relevant information.").

## IV.   IPCO IS ENTITLED TO COSTS AND FEES.

IPCO requested on numerous occasions that L+G withdraw the Motion.  The Motion is

premature, and was filed improperly.  Moreover, IPCO proposed in good faith numerous

solutions to the issues raised in L+G's Motion to ease any burden that L+G may incur in

complying with the Subpoena, and L+G has refused to engage in serious efforts to resolve such

issues.  Accordingly, IPCO requests that the Court deny the Motion and award IPCO costs and

fees.

## V.   CONCLUSION.

For the reasons stated above, IPCO requests the following (a) that the Court deny the

Motion; (b) that the Court award IPCO fees and costs incurred in opposing the Motion; and

(c) any other relief that the Court deems appropriate.

6

**DUANE MORRIS LLP**

Of counsel:

/s/ Gary W. Lipkin
Gary W. Lipkin (Bar I.D. No. 4044)
1100 N. Market St., Suite 1200
Wilmington, DE 19801
(302) 657-4903 (telephone)
(302) 657-4901 (facsimile)

John C. Herman
Matthew C. Gaudet
Antony L. Sanacory
DUANE MORRIS LLP
1180 West Peachtree Street
Suite 700
Atlanta, Georgia 30309-3448
(404) 253-6900 (telephone)
(404) 253-6901 (facsimile)

Dated:  February 14, 2006

Counsel for Plaintiff
IPCO, LLC

## CERTIFICATE OF SERVICE

I, Gary W. Lipkin, do hereby certify that on February 14, 2006, I caused to be served a copy of the foregoing "IPCO, LLC's Response In Opposition To Third-Party Landis+Gyr, Inc.'s Motion To Quash Subpoena" on the following counsel of record via e-filing:

Sean Paul Hayes, Esq.
Fish & Richardson, P.C.
919 N. Market Street, Suite 1100
P.O. Box 1114
Wilmington, DE 19899-1114
(302) 652-5070

/s/ Gary W. Lipkin (Bar I.D. No. 4044)

DM1\557215.1

# EXHIBIT A

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| IPCO, LLC, | ) |
| | ) |
| Plaintiff, | ) **SUBPOENA IN A CIVIL CASE** |
| | ) |
| v. | ) CIVIL ACTION FILE NO. 1:05-CV-2658-CC; |
| | ) UNITED STATES DISTRICT COURT |
| | ) NORTHERN DISTRICT OF GEORGIA |
| CELLNET TECHNOLOGY, INC., | ) |
| Defendant. | ) |

TO:     Landis + Gyr, Inc.
        C/O the Corporation Trust Company
        Corporation Trust Center 1209 Orange Street
        Wilmington, DE 19801

☐ YOU ARE COMMANDED to appear in the United States District Court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | DATE AND TIME |

☐ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION: | DATE AND TIME : |
|---|---|
| | |

☒ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below:  (see Schedule A attached hereto).

| PLACE:<br>**Gary W. Lipkin**<br>**Duane Morris LLP**<br>**1100 North Market Street, Suite 1200**<br>**Wilmington, DE 19801-1246**<br>**302.657.4900** | DATE AND TIME:<br>**9:00 a.m.**<br>**January 13, 2006** |
|---|---|

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
| | |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify.  Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT)<br><br>*Gary M. Lipkin*<br>Attorney for Intervener/Defendant/Counter-Plaintiff. | DATE<br><br>December 29, 2005 |
|---|---|

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER

Gary W. Lipkin, Duane Morris LLP, 1100 North Market Street, Suite 1200, Wilmington, DE 19801-1246 (302.657.4900)

AO88 (Rev. 1/94) Subpoena in a Civil Case

## PROOF OF SERVICE

| | DATE 12/29/05 | PLACE 1209 ORANGE St WILM DE 19801 |
|---|---|---|
| SERVED | LANDIS + GYR, INC | |

SERVED ON (PRINT NAME) Scott La Scala

MANNER OF SERVICE By Hand At 4:10PM

SERVED BY (PRINT NAME) FRANK JOYCE

TITLE Process Server

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on 12/29/05
        DATE

SIGNATURE OF SERVER

PARCELS INC
ADDRESS OF SERVER

230 N. MARKET St, WILM DE 19801

---

Rule 45, Federal Rules of Civil Procedure, Parts C & D:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction which may include, but is not limited to lost earnings and reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(2) (B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to compel production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance;

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii)

of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held, or

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies, or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's stud made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect th person subject to or affected by the subpoena, quash or modify the subpoena, or, if the part in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA

(1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

## SCHEDULE A

## INSTRUCTIONS

A.    Produce all responsive documents in your possession, custody or control, wherever located.

B.    Produce entire documents, including attachments, enclosures, cover letters, memoranda, and appendices, with all staples and clips attached and with all associated file folders, dividers, and file labels.

C.    Electronic records and computerized information must be produced in an intelligible format or together with a description of the system from which it was derived sufficient to permit rendering the materials intelligible.

D.    Should any document or thing be withheld based on some claim of privilege or fail to be produced due to its loss or destruction, please supply the following information:

1.    The type of document or thing, e.g., letter or memorandum;

2.    The general subject matter of the document or identity of the thing;

3.    The date of the document or thing;

4.    If a document, the number of pages in the document;

5.    Such other information as is sufficient to identify the document or thing for a subpoena duces tecum, including, when indicated, the author of the document, any recipients shown in the document, and, where not apparent, the relationship of the author, addressees, and recipients to each other; and

6.    The claimed ground(s) for limitation of discovery (e.g., attorney-client privilege or attorney work product) and the facts, statutes, rules, or decisions upon which the claim is founded or the circumstances of the loss or destruction of the document or thing.

E.    If no documents or things are responsive to a particular request, you are to state that no responsive documents or things exist.

F.     Any redacted document should be clearly stamped with the word "REDACTED," and the portions redacted should be clearly indicated.

## DEFINITIONS

The following definitions shall apply herein, regardless of whether upper or lower case letters are used:

A.     The term "Cellnet" shall mean Cellnet Technologies, Inc., its predecessors, successors, parents, subsidiaries and related companies, and shall include its present and former officers, directors, agents, employees, accountants, attorneys, investigators, consultants, and representatives.

B.     The terms "you," "your," and "Landis & Gyr" shall mean Landis + Gyr, Inc., Landis & Gyr, and any of their predecessors, successors, parents, subsidiaries and related companies, and shall include any of their present and former officers, directors, agents, employees, accountants, attorneys, investigators, consultants, and representatives.

C.     The term "IPCO" shall mean IP CO., LLC and its present and former officers, directors, agents, employees, and representatives.

D.     The term "Civil Action" shall mean Civil Action No.: 1:05-CV-2658-CC, which is pending before the Federal District Court for the Northern District of Georgia between IPCO and Cellnet.

E.     The term "Cellnet Technology" means Cellnet's Utilinet®-mesh network system, including but not limited to the InfiNet component, and any derivations thereof and any other Cellnet system, component or product that Cellnet makes, uses, sells, offers for sale, leases, offers for lease or licenses.

F.      The terms "licensed" or "licensing" means any authorization to make, have made, use, sell or offer for sale any product or process: (i) the unlicensed manufacture, use, offer for sale, or sale of which would infringe any United States or foreign patent; (ii) that is claimed in any United States or foreign patent; or (iii) that is the subject of a trade secret, including but not limited to any agreement (whether in the form of a grant, sublicense, bilateral contract, option, offer to make a unilateral contract, stipulation in a legal action or other proceeding, statement that patent rights will not be asserted in respect of a particular subject matter, or agreement to sell or distribute any patented product) and any schedule, addendum, or amendment thereto, and any modification thereof.

G.      The terms "business entity" or "entity" shall mean firms, corporations, partnerships, joint ventures, unincorporated associations, companies, businesses, partnerships, proprietorships, or fictitious or trade names.

H.      The term "date" shall mean the precise month, day, and year, if known, or as precise a statement of the month, day, and year as is permitted by your knowledge and the documents and information available to you.

I.      The phrase "refer, reflect or relate to," with respect to any given subject, shall mean constituting, containing, embodying, evidencing, reflecting, identifying, stating, dealing with, or in any way pertinent to that subject, including without limitation documents concerning the preparation of other documents.

J.      The term "any" shall be deemed to include and encompass the words "each" and "all." The use of the word "or" shall mean "and" as well as "or."

K.      The term "document" shall mean, in addition to its common meaning, the original and all non-identical copies of every writing or record of every type and description, however

produced or reproduced, that are in your possession, custody, or control, or to which you have access, including, without limitation, correspondence, memoranda, tapes, stenographic or handwritten notes, electronic mail, e-mail, instant messaging correspondence, invoices, purchase orders, telegrams, telexes, studies, publications, films, microfilms, voice or sound recordings, computer records or data in whatever form they may be stored or kept, magnetic records, maps, reports, surveys, statistical compilations, tax returns, accounting or other work papers, invoices, receipts, checks, check stubs, accounts, deposit slips, and ledgers.

L.    The term "applicable time period" shall mean June 19, 2001 through the date of service of your responses to these document requests.

M.    The term "facts" shall mean all facts, evidence, details or information of any type acquired by Cellnet, by any means.

N.    The term "communications" shall mean any and all written communications between two or more persons contained in any documents, or oral communications including, but not limited to, telephone communications, personal conferences or meetings between two or more persons.

O.    "Any" and "all" shall be construed to mean both any and all.

P.    The words "and" and "or" shall be construed conjunctively or disjunctively, whichever makes the request most inclusive.

Q.    The singular form of a word should be interpreted in the plural as well.

## DOCUMENTS TO BE PRODUCED

1.     All documents that refer, reflect or relate to the sale, lease or licensing of Cellnet Technology.

2.     All documents that refer, reflect or relate to any contracts between Landis & Gyr and Cellnet.

3.     All documents that refer, reflect or relate to marketing of the Cellnet Technology.

4.     All documents that refer, reflect or relate to the technical details of any Cellnet Techonolgy.

5.     All documents that refer, reflect or relate to communications with Cellnet or any other party regarding IPCO, the Civil Action, or any of IPCO's patents.

6.     Documents identifying any revenues obtained through the use, sale, lease or licensing of Cellnet Technolgy.

7.     All documents that refer, reflect or relate to communications with Cellnet regarding current, past or projected sales of or profits derived from the sale, lease or license of any Cellnet Technology.

8.     All documents that refer, reflect or relate to the Civil Action or any dispute between Cellnet and IPCO.

9.     All documents that refer, reflect or relate to the value of the Cellnet Technology.

10.     All documents that refer, reflect or relate to communications with Cellnet regarding the value of the Cellnet Technology.

11.     All documents that refer, reflect or relate to projected sales, leases and licensing over the next five (5) years of the Cellnet Technology.

# EXHIBIT B

**From:** Herman, John C.
**Sent:** Wednesday, January 11, 2006 1:08 PM
**To:** 'Nick Setty'
**Cc:** Christopher O. Green
**Subject:** RE: Landis & Gyr

yes - that's fine.

> **From:** Nick Setty [mailto:Setty@fr.com]
> **Sent:** Wednesday, January 11, 2006 1:03 PM
> **To:** Herman, John C.
> **Cc:** Christopher O. Green
> **Subject:** RE: Landis & Gyr
>
> Thanks John.
>
> The production deadline was 1/13/06, and I do not know the precise service date. To avoid any confusion on the extended response date, may L+G have through and including 1/23/06 to respond to the subpoena?
>
> Nick
>
>
> Nagendra Setty
> ~ Fish & Richardson
> 1230 Peachtree Street
> 19th Floor
> Atlanta, Georgia 30309
> 404.892.5005 (main)
> 404.892.5002 (fax)
> 404.942.2751 (direct line)
>
> This email message is from an attorney, is intended for the sole use of the intended recipient(s) and may contain information that is confidential, privileged and/or attorney work product. If you are not the intended recipient, please immediately contact the sender and delete all copies
>
>
> **From:** Herman, John C. [mailto:JCHerman@duanemorris.com]

2/14/2006

**Sent:** Wednesday, January 11, 2006 12:56 PM
**To:** Nick Setty
**Subject:** Landis & Gyr

Nick -

10 day extension on the Landis & Gyr subpoena is fine.

congratulations on your move.

John C. Herman
Duane Morris LLP
1180 West Peachtree Street, Suite 700
Atlanta, Georgia 30309-3448
404-253-6913 (telephone)
404-253-6901 (facsimile)
jcherman@duanemorris.com

Confidentiality Notice: This electronic mail transmission is privileged and confidential and is intended only for the review of the party to whom it is addressed. If you have received this transmission in error, please immediately return it to the sender. Unintended transmission shall not constitute waiver of the attorney-client or any other privilege.

# EXHIBIT C

DuaneMorris®

FIRM and AFFILIATE OFFICES

NEW YORK
LONDON
LOS ANGELES
CHICAGO
HOUSTON
PHILADELPHIA
SAN DIEGO
SAN FRANCISCO
BOSTON
WASHINGTON, DC
LAS VEGAS
ATLANTA
MIAMI
PITTSBURGH
NEWARK
ALLENTOWN
WILMINGTON
HARRISBURG
PRINCETON
LAKE TAHOE

JOHN C. HERMAN
DIRECT DIAL: 404.253.6913
E-MAIL  jcherman@duanemorris.com

www.duanemorris.com

February 1, 2006

VIA FACSIMILE/
CONFIRMATION BY U.S. MAIL

Mr. Nagendra Setty
FISH & RICHARDSON, P.C.
1230 Peachtree Street
19th Floor
Atlanta, Georgia  30309

> Re:    IP Co., LLC v. Cellnet Technology, Inc.
>        Civil Action File No. 1:05-CV-2658-CC

Dear Nick:

I write regarding Landis + Gyr's ("L+G") motion in the District of Delaware to quash IPCO's subpoena (the "Motion"). L+G is required under Delaware local rules to attempt to resolve in good faith the issues raised in the Motion, and to certify that such attempt has been made and was unsuccessful. L+G has made no such attempts, and, therefore, we request that L+G withdraw the Motion immediately and comply with these rules.

In the Motion, L+G raises three concerns – location of production, duplication, and protective order – all of which could have been dealt with by a simple phone call. *First*, IPCO is willing to allow L+G to produce the documents in Indiana, at a place and time agreeable to the parties. *Second*, IPCO is willing to discuss limiting its requests in a manner that would limit any burdens on L+G. Moreover, as you are aware since you are also Cellnet's counsel of record, Cellnet currently has taken the position that it will not produce any documents dated after July 23, 2004 and that it will not produce documents and communications with its customers. Therefore, as you are fully aware, L+G's assertions that L+G's productions and Cellnet's productions would be duplicative is simply incorrect because the Subpoena covers the exact types of documents that Cellnet currently refuses to produce, as well as certain other categories of documents. *Finally*, IPCO is willing to enter into an agreement or protective order in an effort to alleviate L+G's confidentiality concerns.

DuaneMorris

Mr. Nagendra Setty
February 1, 2006
Page 2

L+G's allegations that the Subpoena is simply a litigation tactic could not be further from the truth. Had L+G followed the Delaware local rules or discussed with us in advance the issues raised in the Motion, both you and L+G would know that each of the concerns raised in the Motion can be easily addressed. Accordingly, IPCO requests that L +G withdraw the Motion and contact me at your earliest convenience to discuss the production of documents by L+G. If L+G refuses to do so, IPCO will be forced to contest the Motion and seek all appropriate relief for these improper tactics.

The response date for the Motion is February 7, 2006. We look forward to a timely response.

Sincerely yours,

John C. Herman

JCH/tac

# EXHIBIT D

DuaneMorris°

FIRM and AFFILIATE OFFICES

NEW YORK
LONDON
LOS ANGELES
CHICAGO
HOUSTON
PHILADELPHIA
SAN DIEGO
SAN FRANCISCO
BOSTON
WASHINGTON DC
LAS VEGAS
ATLANTA
MIAMI
PITTSBURGH
NEWARK
ALLENTOWN
WILMINGTON
HARRISBURG
PRINCETON
LAKE TAHOE

olsinmcnry@duanemorris.com
(404) 253-6939
www.duanemorris.com

February 10, 2006

VIA FACSIMILE/
CONFIRMATION BY U.S. MAIL

Mr. Noah Graubart
FISH & RICHARDSON, P.C.
1230 Peachtree Street
19th Floor
Atlanta, Georgia  30309

Re:    IP Co., LLC v. Cellnet Technology, Inc.,
       Civil Action File No. 1:05-CV-2658-CC

Dear Noah:

I write in response to your letter dated February 9, 2006 regarding our conversations about the subpoena (the "L+G Subpoena") that IPCO served on Landis + Gyr, Inc. ("L+G"). I believe you have misstated important parts of our conversation, and I write to make certain that there is no confusion  You will recall that L+G raised three issues in its Motion to Quash: location of production, duplication, and protective order. Our discussions on February 8, 2006 were the beginning of the parties' reasonable efforts to resolve these concerns.

As I explained to you on February 8, the starting point in resolving any potential differences between the parties would be for L+G to make a reasonable assessment as to the quantity and nature of documents that would be responsive to the L+G Subpoena, and to determine how many responsive documents, if any, actually would be duplicative of Cellnet's production.[1]  It is my understanding from our discussions that L+G has not undertaken this effort  Based on this important fact, the characterization in your letter that we have a complete agreement is not and cannot be inaccurate. Part of our discussions centered on resolving two of L+G's concerns – location of production and protective order – and IPCO offered potential

---

[1]    Recall that Cellnet has refused to produce many of the categories of documents that L+G claims to be duplicative.   Moreover, in its interrogatory responses, Cellnet has refused to undertake any effort to explain which documents may have been destroyed.

DUANE MORRIS LLP

1180 WEST PEACHTREE STREET, SUITE 700  ATLANTA  GA 30309-3448                    PHONE: 404 253 6900  FAX: 404 253 6901
DM1\556298 1

DuaneMorris

Mr. Noah Graubart
February 10, 2006
Page 2

solutions to those concerns. However, with respect to the third concern (duplication), you were not able to explain to me any characteristics of the documents in L+G's possession, whether there was indeed duplication, how many documents there were, and consequently, whether the statements in L+G's Motion to Quash regarding the allegedly burdensome nature of the L+G Subpoena were even accurate. Until that third issue is even understood, we cannot have a final agreement.

IPCO's offer to travel to Indiana is one possible solution to L+G's concerns regarding location of production. However, we cannot even be certain that it would be a reasonable approach until L+G undertakes the effort to actually consider the quantity and nature of responsive documents in its possession  For example, if, after L+G makes a reasonable initial assessment, L+G determines there are only a few boxes of documents that would be responsive, there would be no basis for any of the allegations made in L+G's Motion to Quash (with the possible exception of protective order), and L+G should simply produce the responsive documents rather than force IPCO to send someone up to Indiana to retrieve them.

You also refer to the protective order in your letter. IPCO certainly is willing to enter an agreeable protective order as an option to resolve L+G's concerns, and will certainly consider any reasonable provisions proposed by L+G. However, IPCO will not agree to any protective order or special provisions until we at least have had a chance to review the order and additional provisions. I encourage you to send me the draft provisions as soon as possible.

As L+G has not undertaken the efforts to fully understand the issues before the parties and as those efforts would be a necessary component of any good faith effort to attempt to resolve L+G's concerns, we see no reason for L+G to continue with its Motion to Quash at this time. This is particularly true in light of the facts that pursuing the Motion to Quash creates considerable expenses, and L+G's main concern appears to be that the L+G Subpoena would be burdensome. Moreover, I want to reiterate that L+G has an obligation to withdraw its Motion to Quash because L+G filed that motion prematurely and before making any effort to resolve any of the concerns it raised in its Motion. Therefore, your reference to the word "consideration" in the last full paragraph of your letter is inappropriate, because L+G has an obligation to withdraw that Motion, regardless of consideration

Finally, I do not believe it is necessary to wait until the completion of fact discovery with Cellnet before L+G takes the initial steps of determining the nature and quantity of possibly responsive documents, and I look forward to continuing our discussions regarding these issues.

DuaneMorris

Mr. Noah Graubart
February 10, 2006
Page 3

Please let me know if one week from today would be a reasonable amount of time to conduct this initial assessment. In the meantime, please contact me immediately to confirm whether L+G will withdraw its Motion to Quash. The current response date is February 14, 2006, so I would appreciate your prompt response.

Sincerely,

*Antony L. Sanacory*

Antony L. Sanacory

ALS/tac

cc:     Mr. Matthew Gaudet
        Mr. John Herman
        Mr. Michael Jones

DM1\556298 1

# EXHIBIT E

## Sanacory, Antony L.

**From:**   Christopher O. Green [cgreen@fr.com]
**Sent:**   Monday, February 13, 2006 4:50 PM
**To:**     Sanacory, Antony L.
**Cc:**     Daniel A. Kent; Sanacory, Antony L.
**Subject:** L+G Subpoena

Tony -

I write in response to your letter of February 10, 2006 to Noah Graubart regarding IPCO's service of a subpoena on Landis + Gyr, and your email of earlier today concerning the same.

As an initial matter, please forward future correspondence to via email, rather than only via facsimile with U.S. Mail confirmation. This will allow us to obtain and respond to your correspondence with greater ease and speed. Your letter of February 10 (a Friday) was apparently not received until after close of business, thus preventing a response by us until today. We will endeavor to do the same when communicating by letter with your team.

Turning to the substance of your letter, we do not agree that L+G is presently obligated to gather, review, and asses the contents of all documents potentially responsive to IPCO's subpoena to determine what is and is not duplicative of the discovery that IPCO will obtain from Cellnet. The plain language of the document requests IPCO served on Cellnet and L+G reveals substantial, unnecessary overlap and duplication, as was discussed in conference. IPCO bears responsibility for minimizing the discovery burden on L+G, a non-party to this litigation. Your proposal appears to allocate the discovery burdens in exactly opposite fashion.

Second, we do not agree that L+G is obligated to withdraw its motion. We have now held multiple conferences and exchanged multiple pieces of correspondence addressing the issues raised by IPCO's subpoena. L+G is clearly working towards a good faith resolution of this matter. If you believe additional time will lead to a mutually satisfactory resolution, as is our hope, then the best solution seems to be extending the time for IPCO's response to the motion to quash.

Finally, with respect to the need for a protective order preceding any exchange of commercially sensitive information, we forwarded a proposed Consent Protective Order to Mr. Herman and Mr. Gaudet on February 8, 2005. We will be glad to discuss the provisions of this proposed Order with you once you have had sufficient opportunity to review it. At that time, we can also discuss application of sufficient protective order provisions to L+G.

Please advise as to whether you will accept L+G's offer of an extension of time for IPCO to respond to L+G's motion to quash. If so, please prepare the appropriate paper and forward to us for review. As I will be out of the office tomorrow, please copy Noah Graubart and Dan Kent on any correspondence.

We look forward to continuing towards resolution of this issue.

regards,
Chris

Christopher O. Green
Associate

~Fish & Richardson
1230 Peachtree Street N.E.
19th Floor
Atlanta, Georgia 30309
Direct: 404-942-2753
Fax: 404-892-5002

cgreen@fr.com

This e-mail message is intended for the sole use of the intended recipient(s) and may contain information that is confidential, privileged and/or attorneys' work product. Any review or distribution by any other person is prohibited. If you are not an intended recipient, please immediately contact the sender and delete all copies.